Filed 6/6/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.B., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>D.B.,<br><br>        Defendant and Appellant. | A149815<br><br>(Napa County<br>Super. Ct. No. JV18047) |

In this appeal, D.B. (Minor) challenges dispositional orders issued on May 2, 2016, and on September 7, 2016, continuing him as a ward of the court.  Minor contends the juvenile court erred in the September 7, 2016 order by adding a new probation condition allowing searches of his electronic devices and requiring him to disclose all necessary passwords.  Additionally, Minor contends the juvenile court erred by including in the written versions of both orders probation conditions that appeared to require his parents to reimburse the county for his legal fees, although the juvenile court judge did not include those conditions in orally pronouncing the dispositions.  We agree that the electronics search condition was constitutionally overbroad and we, therefore, strike it.  In the published portion of this opinion, we reject Minor's second challenge, because we do not interpret the May 2, 2016 dispositional order or the September 7, 2016

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of section III.A.

1

dispositional order as imposing a reimbursement obligation on Minor's parents. We also conclude that a 2017 statutory amendment precludes any future reimbursement order.

## I.     FACTUAL BACKGROUND[1]

On May 5, 2015, Minor, then 15 years old, met with the assistant principal of his high school after falling asleep in class. Minor admitted he smoked marijuana the night before but denied having done so on that day. When the assistant principal asked to search him, Minor acquiesced, volunteering that he had a knife. The assistant principal then searched Minor, and found a folding pocket knife with a three-inch blade, rolling papers, and lighters. Minor was arrested, detained, and placed on home detention.

## II.     PROCEDURAL BACKGROUND

On May 7, 2015, the Napa County District Attorney filed a juvenile wardship petition (first petition) under Welfare and Institutions Code section 602 alleging that Minor violated Penal Code section 626.10, subdivision (a), a misdemeanor, by bringing a folding, locking knife onto school grounds. On May 11, 2015, Minor admitted the offense and the matter was continued for a dispositional hearing.

On May 29, 2015, Minor was arrested and detained after a sheriff's officer discovered him smoking marijuana in violation of the conditions of his release. At the subsequent dispositional hearing, on June 10, 2015, the juvenile court declared Minor to be a ward of the court, placed him on probation, to be served while residing in his mother's home, and imposed various probation conditions, including a prohibition against knowingly using or possessing alcohol or controlled substances, and a requirement that Minor submit to testing that would detect such usage.

Ten months later, in April 2016, the district attorney filed a second wardship petition (second petition), alleging that Minor violated his probation conditions because he tested positive for, and admitted using, marijuana and also tested positive for Xanax.

---

[1] The facts here are undisputed and are taken from the probation officer's detention report.

2

Minor admitted he violated probation. At the dispositional hearing on May 2, 2016, the juvenile court continued his wardship, and allowed him to remain in his mother's home.

Two months later, in July 2016, the district attorney filed a third wardship petition (third petition), alleging that Minor violated his probation conditions by failing to attend school on six dates without a valid excuse, using marijuana, and being discharged from a treatment program for noncompliance. On August 8, 2016, the district attorney amended the new petition to add an allegation that Minor admitted using alcohol. On August 10, 2016, Minor admitted violating probation by using marijuana and alcohol and the other alleged violations were dismissed.[2]

In advance of the September 7, 2016 dispositional hearing, the probation officer reported Minor most recently had tested negative for controlled substances, was doing well in school, and had begun working as a cashier. The treatment program advised probation that Minor was attending all of his groups and "doing very well." Minor's mother told probation she had noticed a positive change in Minor, and Minor himself reported he was more motivated to complete the treatment program and probation. The probation officer observed that Minor appeared "cognizant of his triggers, as he [was] distancing himself from his negative peers." In his disposition report, the probation officer recommended continuing Minor's wardship. The juvenile court agreed and, at the September 7, 2016 disposition hearing, continued Minor as a ward of the court, adopting certain terms and conditions.

---

[2] The truancy count was dismissed after the juvenile court determined that Minor voluntarily had enrolled in summer school and that his attendance therefore was not a probation condition. Minor's mother explained that he missed school because he wanted to work to help his family financially. The count for being discharged from a treatment program was dismissed because Minor returned to the program.

## III.    DISCUSSION

### A. <u>Electronics Search Condition</u>

At the September 7, 2016 dispositional hearing, the juvenile court imposed an electronics search condition. Minor contends that the condition is unreasonable and therefore invalid under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) (superseded on another ground by Proposition 8 as stated by *People v. Wheeler* (1992) 4 Cal.4th 284, 290–291), and that it also is unconstitutionally overbroad, because it impermissibly infringes on his Fourth Amendment right under the United States Constitution to be free from unreasonable searches. We agree the condition is unconstitutionally overbroad and we will strike the condition. We, therefore, do not address Minor's contention that the electronics search condition was invalid under *Lent*.[3]

#### 1. <u>Background</u>

In the report submitted for the September 7, 2016 dispositional hearing, without explanation, the probation officer recommended adding an electronics search condition. At the subsequent hearing, Minor's counsel objected, contending the proposed electronic search condition was not rationally related to Minor's offense, i.e., to his violation of probation by using controlled substances. The prosecutor disagreed, asserting there was a rational relationship, because people commonly obtained controlled substances by using their cell phones. The condition was necessary, the prosecutor contended, to allow probation to monitor Minor to keep him "on track" while he was in treatment. Minor's counsel rejected this argument, pointing out that Minor was receiving treatment and services tailored to his offense, and was being tested for any use of controlled substances.

---

[3] As the parties acknowledge, the California Supreme Court has granted review in several cases to determine whether an electronics search condition is reasonably related to a juvenile's future criminality and, therefore, valid under *Lent*, if the condition has no relationship to the crimes the juvenile committed but would facilitate the juvenile's supervision. (See, e.g., *In re Ricardo P.*, review granted Feb. 17, 2016, S230923.)

4

It was unnecessary, therefore, counsel contended, to also search Minor's electronic devices and accounts, where his most private communications were stored.

Unpersuaded, the juvenile court added the electronics search condition and continued Minor's wardship. Although acknowledging that the condition implicated Minor's constitutional privacy right, the juvenile court judge concluded the condition was appropriate in light of Minor's history, because it would allow probation to monitor whether he was communicating with others, attempting to secure controlled substances. The juvenile court judge, therefore, instructed Minor to allow "probation to search all electronic devices by providing probation with the means to have access to those devices and the information therein."

Later the same day, the juvenile court judge issued a signed written disposition order, describing the electronic search condition in greater detail, using the following text, which probation had recommended: "[Minor must] submit all electronic devices under [his] control to search and seizure by the probation officer at any time of the day or night with or without a search warrant, arrest warrant, or reasonable suspicion, including all logs, text and voicemail messages, photographs, emails, and social media account contents contained on any device or cloud or internet connected storage owned, operated, or controlled by [Minor], including but not limited to cell phones, computers, computer hard drives, laptops, gaming consoles, mobile devices, tablets, storage media devices, thumb drives, Micro SD cards, external hard drives, or any other electronic storage devices. [Minor] shall also disclose any and all passwords, passcodes, password patterns, fingerprints, or other information required to gain access into any of the aforementioned devices or social media accounts as requested by any probation officer . . . ."[4]

---

[4] The Attorney General contends that the juvenile court judge appeared to intend his orally pronounced electronics search condition to serve as a summary of the complete condition later confirmed in the written order. Minor appears to agree as he relies on the written order in describing the condition. Based on our review of the record, we agree as well and, therefore, resolve this appeal based on the more inclusive written order.

## 2. Relevant Legal Principles

When a court imposes a probation condition that limits a person's constitutional rights, it " ' "must closely tailor those limitations to the purpose of the condition" '—that is, the probationer's reformation and rehabilitation—' "to avoid being invalidated as unconstitutionally overbroad." ' [Citations.] 'The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the [probationer]'s constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement.' [Citation.] ' " 'Even conditions which infringe on constitutional rights may not be invalid [as long as they are] tailored specifically to meet the needs of the juvenile.' " ' [Citations.]" (*In re P.O.* (2016) 246 Cal.App.4th 288, 297 (*P.O.*); see also, *Alex O. v. Superior Court* (2009) 174 Cal.App.4th 1176, 1181 [to survive constitutional scrutiny, a probation condition "must be narrowly drawn and specifically tailored to the individual probationer"].) " ' "If available alternative means exist which are less violative of the constitutional right and are narrowly drawn so as to correlate more closely with the purposes contemplated, those alternatives should be used." ' [Citation.]" (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

"Whether a probation condition is unconstitutionally overbroad presents a question of law reviewed de novo. [Citation.]" (*P.O.*, *supra*, 246 Cal.App.4th at p. 297.)

## 3. Analysis

Minor asserts that the electronics search condition impermissibly infringes upon his constitutional right to privacy by broadly authorizing probation to review the contents of any electronic device he might have and requiring him to disclose any necessary passwords. (See *P.O.*, *supra*, 246 Cal.App.4th at p. 298 [recognizing that a minor has a right to privacy in his cell phone and electronic accounts]; *People v. Appleton* (2016) 245 Cal.App.4th 717, 724 [discussing privacy interest in electronic devices].) The condition is not tailored specifically to meet his needs, Minor contends, because there is

6

no evidence that usage of electronic devices contributed to his original offense (bringing a folding, locking knife onto school grounds) or to his subsequent probation violations (use of controlled substances). Indeed, Minor points out, there is no evidence he even owns a cell phone or other electronic device.

Nor is there evidence, Minor observes, that imposing the electronic search condition will deter him from future criminality or assist in his rehabilitation. Although the juvenile court justified imposing the condition by speculating that Minor might use an electronic device to communicate with others in an effort to obtain drugs, Minor points out, the record contains no evidence to support that theory. The justification for imposing the condition, therefore, is slight, Minor argues, while the potential infringement on his right to privacy, assuming he does possess a cell phone or other covered electronic device, is unique and unparalleled. (See *Riley v. California* (2014) 573 U.S. ___, 134 S.Ct. 2473, 2491 (*Riley*) ["a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house"]; *id*. at p. 2490 [cell phones contain "a digital record of nearly every aspect of [their owners'] lives—from the mundane to the intimate"]; *People v. Appleton*, *supra*, 245 Cal.App.4th at p. 725 [an electronics search condition may sweep "more broadly than the standard three-way search condition allowing for searches of probationers' persons, vehicles, and homes" because it may allow searches of items outside a probationer's home or vehicle, and of devices not in a probationer's custody].)

We agree with Minor that the electronics search condition imposed here is unconstitutionally overbroad because it is not narrowly tailored to achieve its ostensible purpose or to meet Minor's needs. " ' "[B]ecause there is nothing in [Minor's] past or current offenses or [his] personal history that demonstrates a predisposition" to utilize electronic devices or social media in connection with criminal activity, "there is no reason to believe the [new condition] will serve the rehabilitative function of precluding [Minor] from any future criminal acts." ' " (*In re J.B.* (2015) 242 Cal.App.4th 749, 755.)

7

Any connection between Minor's offenses and his usage of electronic devices is speculative and, absent such evidence, the electronics search condition is not tailored to meet Minor's specific needs. In these circumstances, "[t]he requirement that [Minor] submit his electronic devices for search and provide his probation officer with his electronic passwords is constitutionally overbroad and must be stricken." (*Id.* at pp. 756–757; see also, *P.O.*, *supra*, 246 Cal.App.4th at pp. 297–298 [electronics search condition was unconstitutionally overbroad].)

The Attorney General contends that the electronics search condition here was sufficiently tailored to the legitimate purposes of monitoring Minor's compliance with his probation conditions and deterring him from future criminality. The Attorney General cites *People v. Ebertowski* (2014) 228 Cal.App.4th 1170 (*Ebertowski*) as support for this contention. But, the facts there were distinguishable.

In *Ebertowski*, after the defendant pled no contest to making criminal threats, and admitted a gang allegation, the court imposed an electronics search condition, including a requirement that he disclose his passwords to his electrical devices and social media sites. (*Ebertowski*, *supra*, 228 Cal.App.4th at p. 1172.) The defendant challenged the condition as constitutionally overbroad, contending it was not narrowly tailored. (*Id.* at pp. 1172, 1175.) But the Court of Appeal disagreed, citing evidence the defendant was "a criminal street gang member who promote[d] his gang on [his] social media [account], ma[de] violent threats in person to armed police officers, and physically resist[ed] armed police officers."[5] (*Id.* at p. 1175; see *id.* at pp. 1173–1174.) In upholding the electronics search condition, the Court of Appeal observed that the purpose was to allow probation to implement "search, association, and gang insignia conditions . . . designed to monitor and

_____

[5] The defendant in *Ebertowski* also: repeatedly threatened a police officer's family, stating that he would sexually assault the officer's wife and daughter; repeatedly identified himself as a gang member; told the officer he was " ' "[f]ucking with the wrong gangster" ' "; made gang signs; and urinated on the floor several times during the arrest process. (*Ebertowski*, *supra*, 228 Cal.App.4th at p. 1173.)

8

suppress [the] defendant's gang activity." (*Id*. at p. 1175.) "Access to all of defendant's devices and social media accounts [was] *the only way*," the court concluded, "to see if defendant [was] ridding himself of his gang associations and activities, as required by the terms of his probation, or [was] continuing those associations and activities in violation of his probation." (*Ibid*., italics added.)

In contrast, here, as discussed, there is no evidence of any connection between Minor's use of electronic devices or accounts, and either his initial offense or his subsequent probation violations. Nor is there any evidence that Minor ever used an electronic device to communicate with another person to secure controlled substances, as the juvenile court theorized might occur in justifying the condition. Further, unlike in *Ebertowski*, *supra*, 228 Cal.App.4th 1170, it cannot be argued here that imposing an electronics search condition was *the only way* to see if Minor had stopped using controlled substances as required by the terms of his probation. As Minor's counsel correctly pointed out at the September 2016 dispositional hearing, Minor already was required to submit to drug testing, and that testing had successfully detected past instances in which Minor violated probation by using controlled substances. In light of this available alternative, which here had proven successful previously, there was no need to also impose the electronics search condition. (See, e.g., *In re Shaun R.*, *supra*, 188 Cal.App.4th at p. 1143 [alternatives that are " ' "less violative of the constitutional right and are narrowly drawn . . . to correlate more closely with the purposes contemplated . . . should be used" ' "].)

The Attorney General asserts there was "no adequate" substitute for the electronics search condition that would deter Minor from arranging to procure marijuana and alcohol, but we do not agree. As noted, in contrast to the defendant in *Ebertowski*, there is no evidence Minor previously used electronic devices or accounts to engage in the conduct that was to be monitored on probation (i.e., to procure marijuana or alcohol) and there is no reason, therefore, to presume the proposed monitoring would deter him

9

from such conduct. (See *Ebertowski*, *supra*, 228 Cal.App.4th at pp. 1173–1174 [the prosecutor subpoenaed photographs and comments shown on the defendant's social media account, presenting the records to the court, as evidence the defendant used his account to promote his criminal street gang].) Further, our review of the record here confirms Minor was detained in juvenile hall for more than a month as a result of the prior probation violations. In an interview with probation before the September 2016 dispositional hearing, Minor acknowledged having made poor decisions in the past, but stated he had new motivation to complete treatment and probation going forward, and that he had a new job, which was making a positive impact on his life.

Minor's statements about his mindset were supported by his school's report that it had no concerns with Minor's behavior, that Minor arrived on time, completed all of his work, was "doing great," and was "exhibiting a positive attitude." Minor's mother and his treatment program provided similar accounts. This information does not support the conclusion that *only* by subjecting Minor to a new, exhaustive, and invasive search condition—allowing probation to review every electronic device under his control, including any "gaming consoles, mobile devices, tablets, storage media devices, thumb drives, Micro SD cards, [and] external hard drives" and to access all of his "passwords, passcodes, password patterns, fingerprints, or other [similar] information"—could Minor be deterred from future use of controlled substances.

As noted previously, " '[t]he essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the [probationer's] constitutional rights.' " (*P.O.*, *supra*, 246 Cal.App.4th at p. 297.) Here the legitimate purpose of the electronics search condition did not closely fit the burden it imposed on Minor's constitutional rights. We, therefore, modify the juvenile court's disposition order to strike it.[6]

_____

[6] Although in *P.O.*, *supra*, our colleagues in Division One concluded unconstitutional overbreadth could be avoided by modifying the electronic search

## B. Reimbursement of County Legal Costs

Minor also contends that written orders the juvenile court issued after the dispositional hearings on May 2, 2016 and September 7, 2016 (collectively, the dispositional hearings) must be corrected because they mistakenly included "recommendations" that appear to require his parents to reimburse the county for a combined total of $850 in legal fees, although the juvenile court included no such orders in its oral pronouncements.  The Attorney General disagrees that these provisions were mistakes; he contends the provisions were properly included in the written orders and are binding.  Even if this were not true, however, the Attorney General asserts:  Minor lacks standing to challenge the provisions; he is too late in challenging the May 2016 order and, therefore, has forfeited the right to do so; and his parents are responsible for paying the specified legal fees regardless of whether any order directed them to do so.  Alternatively, the Attorney General submits, if the juvenile court's intention regarding imposition of the fees was unclear, this court may remand the matter with a direction that the juvenile court clarify its orders.

We begin by reviewing the record to determine whether the juvenile court in fact ordered Minor's parents to reimburse the county for legal fees.

---

condition, limiting authorization of warrantless searches to "media of communication reasonably *likely to reveal whether [the minor was] boasting about drug use or otherwise involved with drugs*" (*P.O.*, *supra*, 246 Cal.App.4th at p. 298, italics added), we respectfully disagree.  As did our colleagues in Division Three, in *In re J.B.*, *supra*, we think it "highly doubtful" a limitation of this kind would be "any limitation at all."  (*In re J.B.*, *supra*, 242 Cal.App.4th at p. 758; see *id.* at pp. 758–759, quoting *Riley*, *supra*, 134 S.Ct. at p. 2492 ["restrict[ing] the scope of a cell phone search to those areas of the phone where an officer reasonably believes that information relevant to the crime, the arrestee's identity, or officer safety will be discovered . . . would . . . impose few meaningful constraints on officers"].)

1. <u>Background</u>

In advance of the May 2, 2016 dispositional hearing on the second petition, the probation officer filed a dispositional report, attaching a page of recommended terms and conditions. The seventh and last set of recommendations involved reimbursement of certain county costs.

At the May 2, 2016 dispositional hearing, the juvenile court heard argument on a different issue (i.e., the length of Minor's detention in juvenile hall). The judge then succinctly paraphrased and adopted all of the terms and conditions the probation officer had recommended, making certain modifications, with one exception. The judge did not include the recommended county cost reimbursement terms, and no party raised the omission at the hearing.

The same day (May 2, 2016), the juvenile court issued a written "ORDER AFTER HEARING" signed by the judge. The written order did include the cost reimbursement provisions recommended in the probation officer's report. As relevant here, the order stated: "**Parent/Legal Guardian recommendations:** [¶] [Minor's] parent(s) . . . shall [¶] . . . . [¶] be required to reimburse the County of Napa for legal costs incurred, including $250, *in an amount and manner to be determined*. [Minor's] parent(s), if requested to do so, shall appear before the Financial Hearing Officer." (Italics added.)

The probation officer later submitted a report for the September 7, 2016 dispositional hearing. As before, the report attached recommended terms and conditions, including a recommendation involving reimbursement of certain county costs. At the subsequent hearing, the juvenile court judge again listed and adopted most of the terms and conditions the probation officer had recommended, paraphrasing them, but did not include the reimbursement recommendations. As before, no party raised the omission at the hearing.

The same day (September 7, 2016), the juvenile court issued a written order signed by the judge. It included the cost reimbursement provisions recommended in the

12

probation officer's report.  As relevant here, the written order stated:  "Parent/Legal Guardian recommendations:  [¶] [Minor's] parent(s) or legal guardian shall [¶] . . . be required to reimburse the County of Napa for legal costs incurred, including $600, *in an amount and manner to be determined*.  [Minor's] parent(s), if requested to do so, shall appear before the Financial Hearing Officer; (mandatory) [¶] . . . ."  (Italics added.)

      2. <u>The Juvenile Court Made No Binding Ruling Regarding Minor's Parents'</u>
          <u>Reimbursement Obligations</u>

As noted, Minor contends there is a conflict between (1) the reporters' transcripts, providing the record of the juvenile court's oral pronouncements at the dispositional hearings, and (2) the clerk's transcript, containing the written orders issued after the hearings.  The written orders include " '[r]ecommend[ations]' " that Minor's parents be ordered to reimburse the costs of legal services provided to him, Minor points out, and this was error, he asserts, because the juvenile court could have, but did not, include such a requirement in its oral pronouncements at the hearings.  The written record does not accurately reflect the juvenile court's orders, therefore, Minor submits, and the conflict is best resolved by giving credence to the record contained in the reporters' transcripts.  We do not agree.

"The California Supreme Court has . . . stated that 'a record that is in conflict will be harmonized if possible.' "  (*People v. Contreras* (2015) 237 Cal.App.4th 868, 880, citing, inter alia, *People v. Harrison* (2005) 35 Cal.4th 208, 226.)  If that is not possible, however, "we do not automatically defer to the reporter's transcript, but rather adopt the transcript that should be given greater credence under the circumstances of the particular case.  [Citation.]"  (*People v. Contreras*, *supra*, at p. 880.)  In his reply brief, Minor cites *People v. Mesa* (1975) 14 Cal.3d 466 (*Mesa*) (superseded by statute on another ground as explained in *People v. Turner* (1998) 67 Cal.App.4th 1258, 1268), contending we must give greater credence here to the reporter's transcript.  But the facts in *Mesa* were distinguishable.

13

In *Mesa*, the Supreme Court struck from a minute order and an abstract of judgment references to a prior felony conviction that the defendant had admitted, because the trial judge did not mention the prior conviction when orally pronouncing the judgment. (*Id*. at pp. 470–471.) The reference in the minute order was not controlling, the court reasoned, because " '[r]endition of judgment is an oral pronouncement,' " while "[e]ntering the judgment in the minutes [is] a clerical function [citation]." (*Id*. at p. 471.) "[A] discrepancy between the judgment as orally pronounced and as entered in the minutes[, therefore,] is presumably a result of clerical error," the court concluded. (*Ibid*.) The abstract of judgment also was not controlling, the court concluded, because " '[b]y its very nature, definition and terms [citation] [the abstract] cannot add to or modify the judgment which it purports to digest or summarize.' [Citation.]" (*Ibid*.)

The facts here are different because the asserted conflicts are between the conditions of probation that the juvenile court judge orally imposed at the hearings and the conditions of probation that the judge approved in its later written orders. Entry of a written order signed by a judge is not a ministerial act. (*In re Jerred H.* (2004) 121 Cal.App.4th 793, 798, fn. 3.) Consequently, these changes cannot be dismissed as clerical errors. Rather, the record indicates the juvenile court modified its orders imposing probation conditions, which it had authority to do. (*People v. Thrash* (1978) 80 Cal.App.3d 898, 900–901.)

We reject Minor's argument, therefore, to the extent he contends the juvenile court erred in issuing its written dispositional orders in May 2016 and September 2016. We agree with him, however, to the extent he asserts the juvenile court made no binding ruling regarding his parents' reimbursement obligations. That is because we read the dispositional orders in the context of the statutory framework that existed at the time the juvenile court issued them.

14

In 2016, subdivision (a) of Welfare and Institutions Code[7] section 903.1 made a parent liable for costs that a county incurred in rendering legal services to the parent's child "by an attorney pursuant to an order of the juvenile court." (§ 903.1, subd. (a), as amended by Stats. 2009, ch. 413, § 1;[8] see *In re S.M.* (2012) 209 Cal.App.4th 21, 26 (*S.M.*).) Section 903.45, subdivision (b), required compliance with a specified procedure, however, before a juvenile court could order a parent to pay such costs. In 2016, section 903.45, subdivision (b) provided in pertinent part as follows:

"[T]he juvenile court shall, at the close of the disposition hearing, order any person liable for . . . the cost of legal services as provided for in Section 903.1, . . . to appear before the county financial evaluation officer for a financial evaluation of his or her ability to pay those costs . . . .

"If the county financial evaluation officer determines that a person so responsible has the ability to pay all or part of the costs, the county financial evaluation officer shall petition the court for an order requiring the person to pay that sum to the county . . . . A person appearing for a financial evaluation has the right to dispute the county financial evaluation officer's determination, in which case he or she is entitled to a hearing before the juvenile court . . . .

"At the hearing, a person responsible for costs is entitled to . . . be heard in person, to present witnesses and other documentary evidence, to confront and cross-examine adverse witnesses, to disclosure of the evidence against him or her, and to receive a written statement of the findings of the court. The person has the right to be represented

---

[7] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[8] In 2016, section 903.1, subdivision (a) provided in pertinent part as follows: "The father, mother, spouse, or other person liable for the support of a minor . . . shall be liable for the cost to the county or the court, whichever entity incurred the expenses, of legal services rendered to the minor by an attorney pursuant to an order of the juvenile court . . . ." (Stats. 2009, ch. 413, § 1.)

by counsel, and, if the person is unable to afford counsel, the right to appointed counsel. If the court determines that the person has the ability to pay all or part of the costs, . . . the court shall set the amount to be reimbursed and order him or her to pay that sum . . . ."[9] (Stats. 2013, ch. 31, § 26 [§ 903.45, subd. (b)].) Under section 903.45, subdivision (d), execution could "be issued on the order in the same manner as on a judgment in a civil action, including any balance remaining unpaid at the termination of the court's jurisdiction over the minor." (§ 903.45, subd. (d); Stats. 2013, ch. 31, § 26.)

Nothing in the record before us suggests that the juvenile court complied with this mandatory provision, which both parties omitted to mention in their regular appellate briefs. In particular, there is no indication in the record that the county financial evaluation officer ever held any hearing or made any determination regarding the parents' ability to pay the costs of legal services provided to Minor, or ever petitioned the court for an order requiring the parents to pay a specific sum. Nor is there any indication the court ever ordered Minor's parents to pay a specific sum. Rather, considering the juvenile court's written dispositional orders in the context of the statutory framework, we conclude the dispositional orders are properly interpreted as preliminary findings that the county incurred costs totaling $850 in providing legal services to Minor ($250 for the May 2016 dispositional hearing and $600 for the September 2016 hearing), and—at most—as referrals to the county financial evaluation officer for a determination of

---

[9] Similar procedural requirements apply under Penal Code section 987.8 where a criminal defendant is provided legal assistance through the public defender or court-appointed private counsel. (See Pen. Code, § 987.8, subds. (b), (e); *People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1420 [An order that a criminal defendant reimburse the costs of legal assistance provided to him or her "can be made only if the court concludes, after notice and an evidentiary hearing, that the defendant has 'the present ability . . . to pay all or a portion' of [those] costs"].) In that context, as here, if a court fails to hold the hearing required by statute, it may not order the person to reimburse the legal costs. (See, e.g., *People v. Gonzales* (2017) 16 Cal.App.5th 494, 505; *People v. Webb* (2017) 13 Cal.App.5th 486, 499, disapproved on another ground in *People v. Ruiz* (2018) ___ Cal.5th ___, 232 Cal.Rptr.3d 714.)

16

Minor's parents' ability to pay those costs. Both dispositional orders explicitly stated that the amount of Minor's parents' payment obligation remained "*to be determined.*" (Italics added.) Any claim that the juvenile court erred in ordering Minor's parents to reimburse the county's legal costs, therefore, was premature and we reject it, because no final order for payment has yet been entered.[10] The May 2, 2016 and September 7, 2016 dispositional orders must be clarified to establish that the juvenile court's statements in paragraph 7 of each order do not obligate Minor's parents to pay Minor's legal costs.

    3.  Recent Statutory Amendments Preclude A Future Order Compelling Minor's Parents To Pay His Legal Costs

Because a question is likely to arise, as a result of this decision, about whether the juvenile court may still require Minor's parents to pay the legal costs specified in the May and September 2016 dispositional orders, in the interests of judicial economy, we next address that question. The question arises because, while this appeal was pending, the Legislature enacted Senate Bill No. 190 (Stats. 2017, ch. 678), which, among other things, amended sections 903.1 and 903.45. (*Id.*, §§ 20, 25.5.) The amendments to section 903.1 repealed the provision requiring a parent to reimburse the county for the costs of legal services provided to a minor who is subject to the juvenile delinquency system. (Legis. Counsel's Dig., Sen. Bill No. 190, Stats. 2017, ch. 678, par. 4.) Senate Bill No. 190 was enacted in a regular session, and was not passed as an urgency measure, so became effective on January 1, 2018. (See *People v. Douglas M.* (2013)

---

[10] In light of this conclusion, we need not address the Attorney General's contentions that Minor lacks standing to challenge the asserted orders requiring his parents to pay for legal services provided to him, and that Minor forfeited the right to challenge one of those asserted orders. We also reject the Attorney General's contention that Minor's parents were obligated to pay the costs of the legal services even if they were not ordered to do so by the court, because the statutory framework just discussed clearly contemplates and requires an order of the juvenile court following an evaluation of a parent's ability to pay. (2009, ch. 413, § 1 [§ 903.1]; Stats. 2013, ch. 31, § 26 [§ 903.45].)

220 Cal.App.4th 1068, 1076, fn. 5.) We requested supplemental briefing from the parties about whether Minor's parents could still be held liable for paying the costs of legal services previously rendered to Minor following enactment of Senate Bill No. 190. Minor answered the question in the negative, citing the statutory repeal rule and principles of statutory interpretation and legislative intent. The Attorney General argued the opposite. We agree with Minor.

The Senate Rules Committee Bill digest addressing Senate Bill No. 190 stated that the bill "limit[ed] the authority of local agencies to assess and collect specified fees against families of persons subject to the juvenile delinquency system." (Sen. Rules Com., Off. of Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 190 (2017–2018 Reg. Sess.) as amended Aug. 28, 2017.)[11] Among other things, the bill repealed statutory provisions that made parents and others who were responsible for supporting "a ward, dependent child, or other minor person," liable for reimbursing a wide variety of costs, including: the reasonable costs of transporting a minor to a juvenile facility; the costs of the minor's food, shelter, and care while in temporary custody at a juvenile facility; the costs of supporting a minor while "placed, detained in, or committed to, any institution or other place" pursuant to law or juvenile court order; the cost of a court-designated alcohol or drug education program; "the cost of probation supervision, home supervision, or electronic surveillance of the minor, pursuant to the order of the juvenile court"; and the cost of a service program. (Legis. Counsel's Dig., Sen. Bill No. 190, Stats. 2017, ch. 678, par. 4.)

---

[11] In their supplemental briefs, the parties direct our attention to materials included in the legislative history of Senate Bill No. 190, which are proper sources of legislative intent. (See, e.g., *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169 [discussing Legislative Counsel's digest, third reading analysis, committee reports, and other sources].) On the court's own motion, we take judicial notice of the materials that we cite in this decision. (Evid. Code, §§ 452, subd. (c), 459; *Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1402, fn. 7.)

As noted, Senate Bill No. 190 also amended section 903.1, by repealing the provision that held parents and others liable for the cost of "legal services rendered to [a] minor by an attorney pursuant to an order of the juvenile court." (Legis. Counsel's Dig., Sen. Bill No. 190, Stats. 2017, ch. 678, par. 4; compare Stats. 2017, ch. 678, § 20, with Stats. 2009, ch. 413, § 1.) Senate Bill No. 190 effected this change by adding a new subdivision (a)(1) to section 903.1. (See Historical and Statutory Notes, 73B Pt. 1 West's Ann. Welf. & Inst. Code (2018 supp.) foll. § 903.1, p. 24.) As so amended, the section now states that parents and others are liable "for the cost . . . of legal services rendered to the minor" (subd. (a)(1)(A)), with the exception that the paragraph "*does not apply to a minor who is* adjudged a ward of the juvenile court, who is *placed on probation pursuant to Section 725*, who is the subject of a petition that has been filed to adjudge the minor a ward of the juvenile court, or who is the subject of a program of supervision undertaken pursuant to Section 654" (subd. (a)(1)(B)(i)).[12]  (§ 903.1, subd. (a), italics added.)

A Senate Third Reading Analysis provided comments from the bill author with the following explanation of Senate Bill No. 190's purpose:  " 'A recent study by the Policy Advocacy Clinic at University of California Berkeley School of Law has found that imposing administrative fees to families with youth in the juvenile justice system is harmful, unlawful, and costly. Current California law allows counties to charge administrative fees, which can quickly add up to thousands of dollars, an incredible burden to families with youth in the juvenile justice system. In fact, such criminal justice debt undermines the rehabilitative goals of the juvenile justice system and leads to increased recidivism . . . . Most youth in the juvenile justice system come from poor families who cannot afford to pay fees, and counties ultimately obtain minimal returns

---

[12] But see § 903.1, subd. (a)(1)(B)(ii) (section 903.1, subdivision (a)(1) does apply "to a minor who is designated as a dual status child pursuant to Section 241.1, for purposes of the dependency jurisdiction only and not for purposes of the delinquency jurisdiction").

despite the high fiscal and societal costs associated with collecting fees. Counties cannot continue to balance their books on the back[s] of poor people. *This bill would end the assessment of administrative fees against families with youth in the juvenile justice system. By doing so, it will eliminate a source of financial harm to some of the state's most vulnerable families, support the reentry of youth back into their homes and communities, and reduce the likelihood that youth will recidivate.*' " (Sen. Rules Com., Off. Of Sen. Floor Analyses, 3d Reading Analysis of Sen. Bill No. 190 (2017–2018 Reg. Sess.) as amended Aug. 28, 2017, pp. 3-4, italics added.) In the "Comments" section of its analysis of Senate Bill No. 190, the Assembly Appropriations Committee quoted the Juvenile Court Judges of California: " 'Based upon our collective experience, imposing fines and fees upon the family of a young person who is moving through the juvenile justice system is overreaching and punitive upon a population of families that is already facing multiple economic challenges to raise a family in our state.' " (Assem. Appropriations Com., Analysis of Sen. Bill No. 190 (2017–2018 Reg. Sess.) as amended July 13, 2017, Comments, ¶ 2.)

Minor contends that the statutory repeal rule applies to preclude any future juvenile court order directing his parents to pay the costs of legal services provided to him in 2016. He cites *Governing Board v. Mann* (1977) 18 Cal.3d 819 (*Mann*). The California Supreme Court there affirmed "[a] long well-established line of California decisions . . . . hold[ing] under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.' [Citation.]" (*Id.* at p. 829; see also, e.g., *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 489.) " ' "*If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered.*" ' " (*Mann*, *supra*, at pp. 822–823, 830–831, italics added,

20

quoting *Southern Service Co., Ltd. v. Los Angeles* (1940) 15 Cal.2d 1, 11–12.) " 'The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.' [Citation.]" (*Mann*, *supra*, at p. 829.)

"This general common law rule has been applied in a multitude of contexts," *Mann* observed, citing a host of cases. (*Mann*, *supra*, 18 Cal.3d at p. 829; *id*. at pp. 829–830 & fn. 8.) One of those cases, *Napa State Hospital v. Flaherty* (1901) 134 Cal. 315 (*Napa State Hospital*) (modified on another ground in *Napa State Hospital v. Yuba County* (1903) 138 Cal. 378, 380–381), is noteworthy here. As *Mann* observed in a parenthetical, *Napa State Hospital* involved the repeal of a statutory right to charge a parent for services provided to the parent's child. (*Mann*, *supra*, at p. 830, fn. 8; see *Napa State Hospital*, *supra*, at pp. 316–317.) The Legislature had enacted a law for the government of state mental hospitals, and it repealed all existing laws that conflicted with the new law. (*Napa State Hospital*, *supra*, 134 Cal. at p. 317.) Based on that legislative action, the California Supreme Court affirmed an order sustaining a father's demurrer to the complaint that a state mental hospital had filed against him. (*Id*. at pp. 316–317.) The complaint relied on an earlier statute, which had required parents to reimburse state mental hospitals for costs the hospitals incurred in caring for the parents' children following the children's commitment. (*Id*. at p. 316.) In sustaining the demurrer after the new law was enacted, the Supreme Court reasoned, "It is a rule of almost universal application that where a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause. [Citation.] . . . '[I]t must be considered as a law that never existed, except for the purpose of those actions which were commenced, prosecuted, and concluded whilst it was an existing law.' " (*Id*. at pp. 317–318; see also,

21

e.g., *Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.* (2009) 176 Cal.App.4th 1597, 1602, 1611–1612 [annulling Workers' Compensation Appeals Board finding that an applicant was entitled to vocational rehabilitation benefits because the statute conferring the benefits was repealed before the judgment became final through the appellate process].)

Applying the principles stated in *Mann* and *Napa State Hospital*, *supra*, because no final order was entered in this case requiring Minor's parents to pay the $850 in legal costs before Senate Bill No. 190 became effective, we must dispose of this case under the law that is currently in force. (*Mann*, *supra*, 18 Cal.3d at pp. 822–823; *Napa State Hospital*, *supra*, 134 Cal. at p. 317.) That law directs that section 903.1, subdivision (a)(1)(A), which holds parents liable for the cost of legal services provided to their children under order of the juvenile court, "does not apply to a minor who is adjudged a ward of the juvenile court . . . [or] who is placed on probation pursuant to Section 725 . . . ." (§ 903.1, subd. (a)(1)(B)(i).) As Minor here has been adjudged a ward of the juvenile court and has been placed on probation, section 903.1, subdivision (a)(1)(A) does not apply to him and his parents may not be held liable for the costs of legal services provided to him.

Without directly addressing the statutory repeal rule in his simultaneously filed supplemental brief, the Attorney General opposes this conclusion, contending Senate Bill No. 190 must be applied prospectively. Even if we were not convinced that the statutory repeal rule applied here, however, we would reject this argument because it relies on a flawed premise. The Attorney General characterizes the juvenile court's May and September 2016 dispositional orders as determinations that Minors' parents were obligated to pay the cost of the legal services provided to Minor. Without acknowledging the requirements of section 903.45, subdivision (b), set forth above, the Attorney General implies the parents were immediately responsible for paying the total cost of the legal services provided to Minor in full and outright, even though there is no record the county

22

financial evaluation officer or the juvenile court ever evaluated their ability to pay, as required.[13] (Stats. 2013, ch. 31, § 26 [§ 903.45, subd. (b) in 2016]; § 903.45, subd. (b)(1)(A).)

As discussed, we interpret the dispositional orders differently, concluding they only established the total cost of the legal services provided to Minor for the May and September 2016 dispositional hearings. Both dispositional orders explicitly confirmed that the "amount and manner" of Minor's parents' payment obligations remained "to be determined." We conclude, therefore, that the orders are best understood as constituting the initial step in the statutory procedure described in section 903.45, and not as final rulings by the juvenile court requiring the parents to pay a specified sum to the county "in a manner that is reasonable and compatible with [their] financial ability." (Stats. 2013, ch. 31, § 26 [§ 903.45, subd. (b) in 2016]; see also, § 903.45, subd. (b)(5).) Any final ruling the juvenile court might now be asked to make on a petition from the county financial evaluation officer, therefore, necessarily would require a prospective application of Senate Bill No. 190, the law that is now in effect. (See, e.g., *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 307 [" 'The Legislature ordinarily makes laws that will apply to events that will occur in the future' "].)

## IV.    DISPOSITION

We strike the condition in the juvenile court's September 7, 2016 dispositional order that Minor must "submit all electronic devices under [his] control to search and seizure by the probation officer . . . . [and] disclose any and all passwords, passcodes, password patterns, fingerprints, or other information required to gain access into any of" his electrical devices. Additionally, paragraph 7.b. of the May 2, 2016 dispositional order, and paragraph 7.a. of the September 7, 2016 dispositional order are modified to

---

[13] Evidence in the record indicated that Minor's mother previously worked in the fields but had been unemployed for some time.

clarify that they do not require Minor's parents to reimburse the county for Minor's legal fees.

_____
Schulman, J.*

We concur:

_____
Streeter, Acting P.J.

_____
Reardon, J.

_____

* Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. D.B.* (A149815)

*People v. D.B.* (A149815)

| | |
|---|---|
| Trial Court: | Napa County Superior Court |
| Trial Judge: | Honorable Michael Williams |
| | |
| Counsel for Defendant & Appellant: | Law Office of Anne Mania and Anne Mania, by Court-Appointment through The First District Appellate Project. |
| Counsel for Plaintiff & Respondent: | Xavier Becerra, Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Eric D. Share, Supervising Attorney General, Huy T. Luong, Deputy Attorney General. |