Filed 10/24/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DOUGLAS M.,<br><br>        Defendant and Appellant. | A136993<br><br>(San Mateo County<br>Super. Ct. No. SC068572A) |

Douglas M. appeals from an order modifying his probation, pursuant to amended Penal Code section 1203.067,[1] which sets forth various new probation conditions for registered sex offenders.[2] Because the presumption of prospectivity of Penal Code statutes, mandated by section 3, cannot be rebutted, we conclude that the provisions of revised section 1203.067 may not be applied retroactively to change the terms and conditions of probation for probationers who committed their offenses before the effective date of the amendment. As appellant's offenses occurred well before that date, the trial court improperly modified the terms and conditions of his probation to include the new provisions.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] At appellant's request, and due to the nature of the underlying offenses of which he was convicted, we do not use his full name in this opinion. (See *In re E.J.* (2010) 47 Cal.4th 1258, 1267, fn. 4 [in "a departure from [its] usual practice (see Cal. Style Manual (4th ed. 2000) § 5:9, pp. 179-180)," our Supreme Court granted petitioners' request to not disclose their identities, "given the particular subject matter of [the] proceedings"].)

1

*PROCEDURAL BACKGROUND*

On May 10, 2006, appellant was charged by complaint in Shasta County Superior Court with one count of continuous sexual abuse of a child (§ 288.5, subd. (a)), and one count of lewd or lascivious acts on a child under age 14 (§ 288, subd (a)). The offenses allegedly were committed between July 2005 and March 2006.[3]

On September 8, 2006, pursuant to a negotiated disposition, the complaint was amended and appellant pleaded guilty to two counts of lewd and lascivious acts on a child under age 14.

On December 14, 2006, the trial court imposed a total sentence of 10 years in state prison, suspended execution of sentence, and placed appellant on formal probation for seven years.

On April 2, 2009, Shasta County transferred probation supervision to San Mateo County, where appellant now lives.

On October 19, 2012, over defense counsel's objections, the trial court modified the terms and conditions of appellant's probation, pursuant to amended section 1203.067. The court stayed the modification order for 30 days.

On November 1, 2012, appellant filed a notice of appeal from the probation modification order.

On January 23, 2013, we granted appellant's petition for a writ of supersedeas and stayed the trial court's probation modification order pending resolution of his appeal.

*DISCUSSION*

Appellant contends the trial court erred when it applied the provisions of amended section 1203.067 to modify the terms and conditions of his probation.

**I. *Trial Court Background***

Appellant was convicted in 2006 of committing offenses that took place between 2005 and 2006.

---

[3] The specific facts underlying appellant's convictions are not relevant to the issues raised on appeal.

In the presence report, the probation officer reported that Dr. David Wilson, a clinical psychologist, had assessed appellant and rated his risk factor for sexual re-offense as low. Dr. Wilson had also described appellant's primary psychiatric problems as flowing "directly from his health problems, for which he has anxiety disorder. Dr. Wilson did not identify any emotional or personality disorder, no antisocial personality disorder or a propensity toward criminal behavior or sexual offenses." Dr. Wilson rated appellant as a good candidate for probation.

Appellant received a suspended sentence and was placed on probation in December 2006. Among other conditions of probation, the court ordered appellant, pursuant to former section 1203.067, to "meaningfully participate in, comply with and follow all the rules and requirements of, and complete a recognized adult sex offender treatment program as directed by the Probation Officer," and further ordered that he "submit to a polygraph examination, for compliance with probation conditions, at the direction of the Probation Officer."

In August 2010, Dr. Wilson, the same psychologist who performed the original psychological evaluation of appellant in 2006, conducted a reevaluation related to the immigration application of appellant's wife. In his report, Dr. Wilson noted that, aside from his 2006 offenses, appellant "has never before nor after been in trouble with the law." In addition, appellant's probation officer had indicated that appellant "has abided by the conditions of his probation and appeared to be 'progressing well.' " Dr. Wilson also noted that appellant was no longer required to see a psychotherapist. Finally, Dr. Wilson believed that appellant's "subsequent performance on probation has borne out my assessment of him as a 'low risk' for re-offense and a good candidate for treatment and rehabilitation."

In September 2012, the San Mateo County Probation Department initiated proceedings in this case and several others to modify the terms of probation due to the recent amendment of section 1203.067, subdivision (b). There was no allegation that appellant had violated any of the terms of his probation. Instead, in a memorandum to the trial court, appellant's probation officer asserted that, "[a]s of July 1, 2012, the law

3

requires the imposition of specific sex offender conditions to all individuals on probation who are required to register as a sex offender," and that those "conditions are to be imposed retroactively to all individuals currently on probation. This includes those who have already completed a non-certified sex offender program."

In her memorandum, the probation officer also discussed appellant's personal circumstances, stating that appellant "is married and the father of two young boys. He appears to have stabilized significantly in his personal life over the years and has been compliant while on supervised probation. His records reflect that he participated in treatment . . . from August, 2007 through January, 2010 when services were then terminated by his provider. This was a result of the therapist's contractual agreement with San Mateo County Mental Health Services in that he could no longer treat clients with Medi-[Cal] insurance, which included the defendant. This agreement was applicable to other San Mateo County treatment providers as well. As a result of this circumstance, the defendant was not further directed by probation to participate in treatment and he was deemed satisfied of this condition."

On October 19, 2012, over defense objections, the trial court ordered the terms and conditions of appellant's probation modified such that "he is required to participate in an approved sex offender management treatment program. That participation will be for . . . a minimum of one year.

"[¶] And he is to submit to random polygraph examinations, waive any privilege against self-incrimination and the psychotherapist-patient privilege will be waived to enable communication between the sex offender management professionals and the probation officer."

## II. *Legal Analysis*

### A. *Section 1203.067's Provisions*

When appellant was initially placed on probation in 2006, the terms and conditions of his probation included those found in former section 1203.067, which provided in relevant part:

4

"(a) Notwithstanding any other law, before probation may be granted to any person convicted of a felony specified in Section 261, 262, 264.1, 286, 288, 288a, or 289, who is eligible for probation, the court shall do all of the following: [¶] . . . . [¶]

"(b) If a defendant is granted probation pursuant to subdivision (a), the court shall order the defendant to be placed in an appropriate treatment program designed to deal with child molestation or sexual offenders, if an appropriate program is available in the county.

"(c) Any defendant ordered to be placed in a treatment program pursuant to subdivision (b) shall be responsible for paying the expense of his or her participation in the treatment program as determined by the court. The court shall take into consideration the ability of the defendant to pay, and no defendant shall be denied probation because of his or her inability to pay."

In October 2012, after appellant had completed some two and one-half years of treatment, in accordance with the terms of his probation, and after the probation department deemed the treatment requirement satisfied, appellant's probation was modified to include the provisions of amended section 1203.067, which provides in relevant part:

"(b) On or after July 1, 2012, the terms of probation for persons placed on formal probation for an offense that requires registration pursuant to Section 290 to 290.023, inclusive, shall include all of the following:

"(1) Persons placed on formal probation prior to July 1, 2012, shall participate in an approved sex offender management program, following the standards developed pursuant to Section 9003, for a period of not less than one year or the remaining term of probation if it is less than one year. The length of the period in the program is to be determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court.

"(2) Persons placed on formal probation on or after July 1, 2012, shall successfully complete a sex offender management program, following the standards developed pursuant to Section 9003, as a condition of release from probation. The length of the

5

period in the program shall be not less than one year, up to the entire period of probation, as determined by the certified sex offender management professional in consultation with the probation officer and as approved by the court.

"(3) Waiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program.

"(4) Waiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09.

"(c) Any defendant ordered to be placed in an approved sex offender management program pursuant to subdivision (b) shall be responsible for paying the expense of his or her participation in the program as determined by the court. The court shall take into consideration the ability of the defendant to pay, and no defendant shall be denied probation because of his or her inability to pay."

The effective date of the amended statute was September 9, 2010, but its provisions did not become operative until July 1, 2012. (§ 1203.067, amended by Stats. 2010, ch. 219 (A.B. 1844), § 17, eff. Sept. 9, 2010; § 1203.067, subd. (b).)[4]

## B. *Amended Section 1203.067 May Not Be Applied Retroactively*

Section 3 provides: "NOT RETROACTIVE. No part of [the Penal Code] is retroactive, unless expressly so declared." Our Supreme Court has "described section 3, and its identical counterparts in other codes (e.g., Civ. Code, § 3; Code Civ. Proc., § 3), as codifying 'the time-honored principle . . . that in the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citations.] In applying this principle, we have been cautious not to infer retroactive

---

[4] " ' "The effective date [of a statute] is . . . the date upon which the statute came into being as an existing law." [Citation.] "[T]he operative date is the date upon which the directives of the statute may be actually implemented." [Citation.] Although the effective and operative dates of a statute are often the same, the Legislature may "postpone the operation of certain statutes until a later time." [Citation.]' [Citation.]" (*People v. Alford* (2007) 42 Cal.4th 749, 753, fn. 2. (*Alford*).)

intent from vague phrases and broad, general language in statutes. [Citations.] Consequently, ' "a statute that is ambiguous with respect to retroactive application is construed . . . to be unambiguously prospective." ' [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319-320 (*Brown*); accord, *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 (*Tapia*).)

In the present case, appellant argues that, in light of section 3's presumption of prospectivity, "the most tenable construction" is that revised section 1203.067 applies to all probationers whose offenses occurred on or after September 9, 2010, including both those already on probation as of July 1, 2012, and those granted probation after that date.

Respondent's entire argument in response is that "the Legislature expressed its intent that the statute apply retroactively by specifying that probationers placed on parole [*sic*] before July 1, 2012 must participate in approved sex offender management programs. [Citation.] Giving the statutory language its 'usual and ordinary meaning,' there is no ambiguity. [Citation.] Thus, the statute applies to those placed on probation before July 1, 2012."

This interpretation, however, completely ignores both section 3's presumption of prospectivity and the context in which the amendment of section 1203.067 came about. The revised statute was enacted as part of Assembly Bill 1844, the Chelsea King Child Predator Prevention Act of 2010 (Chelsea's Law) (Stats. 2010, ch. 219), which altered numerous statutes governing sex offenses and sex offenders. Although the bill was enacted in September 2010 as urgency legislation, intended to take effect immediately (*id*. at § 29),[5] the section 1203.067 amendments did not become operative until July 2012, almost two years later. The apparent reason for this delayed implementation is reflected in other stated requirements of the bill (see, e.g., § 9003 [requiring development and updating of standards for certification of sex offender management professionals and

---

[5] " 'Under the California Constitution, a statute enacted at a regular session of the Legislature generally becomes effective on January 1 of the year following its enactment except where the statute is passed as an urgency measure and becomes effective sooner.' [Citation.]" (*People v. Camba* (1996) 50 Cal.App.4th 857, 865.)

7

programs]), which were prerequisites to application of the new provisions of section 1203.067. There is nothing in this legislative history that provides " ' "a clear and compelling implication" ' " that the Legislature intended the revised statute to apply retroactively. (*Alford*, *supra*, 42 Cal.4th at p. 754 ["Even without an express declaration, a statute may apply retroactively if there is ' "a clear and compelling implication" ' that the Legislature intended such a result"].)

Given this context, the most reasonable interpretation of the language of amended section 1203.067, subdivision (b), regarding "persons placed on formal probation prior to July 1, 2012," is that, for those probationers whose offenses occurred between the effective date of September 9, 2010 and the operative date of July 1, 2012, their participation in—though not necessarily completion of—"an approved sex offender management program" would be required. (*Ibid*.; see *Brown*, *supra*, 54 Cal.4th at pp. 319-320.) This interpretation fulfills the Legislature's intention that this portion of the urgency legislation would take effect immediately upon enactment, applying to probationers whose offenses occurred on or after that date, even though its provisions could not actually be implemented until July 1, 2012. (See *Brown*, at pp. 319-320; see also *People v. Camba, supra,* 50 Cal.App.4th at p. 865.)

Moreover, construing the new statute as retroactive would raise serious questions about its constitutionality. First, people who were on probation before its effective date would now be required to participate in and pay for a new mandatory treatment program, even after many of them had already participated in, paid for, and perhaps completed, court-ordered treatment under their prior probation conditions. (See § 1203.067, subds. (b)(1), (c).) Second, they would have to waive both their privilege against self-incrimination and their psychotherapist-patient privilege. (See § 1203.067, subd. (b)(3) & (4).) Application of these provisions retroactively to such probationers could arguably implicate the federal and state Constitutions' prohibition against ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9; see, e.g., *People v. McVickers* (1992) 4 Cal.4th 81, 84 [ex post facto clause is implicated when a new statute is both retrospective and, inter alia, " ' "makes more burdensome the punishment for a crime,

8

after its commission" ' "]; *People v. Delgado* (2006) 140 Cal.App.4th 1157, 1170 ["statutory changes that retroactively impose greater punishment in probation cases violate the ex post facto clause"].)

These constitutional concerns further support a finding of non-retroactivity under section 3, given the rule of interpretation providing that, " '[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, *or raise serious and doubtful constitutional questions*, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even thought the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers.' [Citations.]" (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 509, italics added; see, e.g., *Tapia*, *supra*, 53 Cal.3d at pp. 298-299 [refusing to apply provisions of several new statutes to crimes committed before statutes' effective date because such application both would be "retrospective" in that it would change legal consequences of defendant's past conduct, and "would also likely violate the rule against ex post facto legislation, since each of these provisions appears to define conduct as a crime, to increase punishment for a crime, or to eliminate a defense"].)

In sum, there is nothing in either the language of the statute or its legislative history clearly indicating a legislative intent for revised section 1203.067 to be applied retroactively to probationers whose crimes occurred before its effective date. (See *Brown*, *supra*, 54 Cal.4th at pp. 319-320; *Alford*, *supra*, 42 Cal.4th at p. 754.) Moreover, to construe the statute as applying to those probationers would raise serious constitutional questions under the federal and state ex post facto clauses. Therefore, in keeping with the mandate of section 3, the amended statute must be viewed as "unambiguously prospective," applying to probationers who committed their crimes on or after the statute's effective date of September 9, 2010. (See *Brown*, at p. 320.) Because

9

appellant's offense occurred before September 9, 2010, the provisions of revised section 1203.067 were improperly applied to him and must be stricken.[6]

### *DISPOSITION*

The judgment is modified to strike the new terms and conditions of probation imposed on appellant pursuant to amended section 1203.067. As so modified, the judgment is affirmed.

---

[6] Appellant also asserts that the trial court acted in excess of its jurisdiction when it modified the conditions of his probation to add the new provisions, since there has been no probation violation or other relevant change in circumstances that could trigger any modification to the terms and conditions of his probation. (See *People v. Cookson* (1991) 54 Cal.3d 1091, 1095 ["[a] change in circumstances is required before a court has jurisdiction to extend or otherwise modify probation"]; *In re Clark* (1959) 51 Cal.2d 838, 840 ["An order modifying the terms of probation based upon the same facts as the original order granting probation is in excess of the jurisdiction of the court, for the reason that there is no factual basis to support it"].) Appellant further suggests that "section 3 may also arguably allow application of section 1203.067[, subdivision] (b) to probationers with pre-September 2010 crimes *who committed some violation of probation on or after September 9, 2010.*" However, in light of our conclusion that amended section 1203.067 is inapplicable to probationers like appellant who committed their offenses before September 9, 2010, we have no reason to address these jurisdictional arguments.

Similarly, there is no need for us to resolve the constitutional issues raised on appeal. (See *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230-231 [" 'A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them' "].)

_____
Kline, P.J.


We concur:


_____
Richman, J.


_____
Brick, J.*


A136993, *People v. Douglas M.*


     * Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | San Mateo County Superior Court |
| Trial Judge: | Honorable John L. Grandsaert |
| Attorneys for Appellant: | First District Appellate Project<br>Jonathan Soglin, Executive Director<br>J. Bradley O'Connell, Asst. Director |
| Attorneys for Respondent: | Kamala D. Harris, Attorney General<br>Dane R;. Gillette, Chief Asst. Atty. Gen.<br>Gerald A. Engler, Sr. Asst. Atty. Gen.<br>Laurence K. Sullivan, Supervising Dep. A.G.<br>Rene A. Chacon, Supervising Dep. A.G. |