Schulman, J.**
*886 *254 In this appeal, D.B. (Minor) challenges dispositional orders issued on May 2, 2016, and on September 7, 2016, continuing him as a ward of the court. Minor contends the juvenile court erred in the September 7, 2016 order by adding a new probation condition allowing searches of his electronic devices and requiring him to disclose all necessary passwords. Additionally, Minor contends the juvenile court erred by including in the written versions of both orders probation conditions that appeared to require his parents to reimburse the county for his legal fees, although the juvenile court judge did not include those conditions in orally pronouncing the dispositions. We agree that the electronics search condition was constitutionally overbroad and we, therefore, strike it. In the published portion of this opinion, we reject Minor's second challenge, because we do not interpret the May 2, 2016 dispositional order or the September 7, 2016 dispositional order as imposing a reimbursement obligation on Minor's parents. We also conclude that a 2017 statutory amendment precludes any future reimbursement order.
I. FACTUAL BACKGROUND[1]
On May 5, 2015, Minor, then 15 years old, met with the assistant principal of his high school after falling asleep in class. Minor admitted he smoked marijuana the night before but denied having done so on that day. When the assistant principal asked to search him, Minor acquiesced, volunteering that he had a knife. The assistant principal then searched Minor, and found a folding pocket knife with a three-inch blade, rolling papers, and lighters. Minor was arrested, detained, and placed on home detention.
II. PROCEDURAL BACKGROUND
On May 7, 2015, the Napa County District Attorney filed a juvenile wardship petition (first petition) under Welfare and Institutions Code section 602 alleging that Minor violated Penal Code section 626.10, subdivision (a), a misdemeanor, by bringing a folding, locking knife onto school grounds. On May 11, 2015, Minor admitted the offense and the matter was continued for a dispositional hearing.
On May 29, 2015, Minor was arrested and detained after a sheriff's officer discovered him smoking marijuana in violation of the conditions of his *255 release. At the subsequent dispositional hearing, on June 10, 2015, the juvenile court declared Minor to be a ward of the court, placed him on probation, to be served while residing in his mother's home, and imposed various probation conditions, including a prohibition against knowingly using or possessing alcohol or controlled substances, and a requirement that Minor submit to testing that would detect such usage.
Ten months later, in April 2016, the district attorney filed a second wardship petition (second petition), alleging that Minor violated his probation conditions because he tested positive for, and admitted using, marijuana and also tested positive for Xanax. Minor admitted he violated probation. At the dispositional hearing on May 2, 2016, the juvenile court continued his wardship, and allowed him to remain in his mother's home.
Two months later, in July 2016, the district attorney filed a third wardship petition *887 (third petition), alleging that Minor violated his probation conditions by failing to attend school on six dates without a valid excuse, using marijuana, and being discharged from a treatment program for noncompliance. On August 8, 2016, the district attorney amended the new petition to add an allegation that Minor admitted using alcohol. On August 10, 2016, Minor admitted violating probation by using marijuana and alcohol and the other alleged violations were dismissed.[2]
In advance of the September 7, 2016 dispositional hearing, the probation officer reported Minor most recently had tested negative for controlled substances, was doing well in school, and had begun working as a cashier. The treatment program advised probation that Minor was attending all of his groups and "doing very well." Minor's mother told probation she had noticed a positive change in Minor, and Minor himself reported he was more motivated to complete the treatment program and probation. The probation officer observed that Minor appeared "cognizant of his triggers, as he [was] distancing himself from his negative peers." In his disposition report, the probation officer recommended continuing Minor's wardship. The juvenile court agreed and, at the September 7, 2016 disposition hearing, continued Minor as a ward of the court, adopting certain terms and conditions.
*256 III. DISCUSSION
A. Electronics Search Condition ***
B. Reimbursement of County Legal Costs
Minor also contends that written orders the juvenile court issued after the dispositional hearings on May 2, 2016 and September 7, 2016 (collectively, the dispositional hearings) must be corrected because they mistakenly included "recommendations" that appear to require his parents to reimburse the county for a combined total of $850 in legal fees, although the juvenile court included no such orders in its oral pronouncements. The Attorney General disagrees that these provisions were mistakes; he contends the provisions were properly included in the written orders and are binding. Even if this were not true, however, the Attorney General asserts: Minor lacks standing to challenge the provisions; he is too late in challenging the May 2016 order and, therefore, has forfeited the right to do so; and his parents are responsible for paying the specified legal fees regardless of whether any order directed them to do so. Alternatively, the Attorney General submits, if the juvenile court's intention regarding imposition of the fees was unclear, this court may remand the matter with a direction that the juvenile court clarify its orders.
We begin by reviewing the record to determine whether the juvenile court in fact ordered Minor's parents to reimburse the county for legal fees.
1. Background
In advance of the May 2, 2016 dispositional hearing on the second petition, the probation officer filed a dispositional report, attaching a page of recommended terms and conditions. The seventh and last set of recommendations involved reimbursement of certain county costs.
*888 At the May 2, 2016 dispositional hearing, the juvenile court heard argument on a different issue (i.e., the length of Minor's detention in juvenile hall). The judge then succinctly paraphrased and adopted all of the terms and conditions the probation officer had recommended, making certain modifications, with one exception. The judge did not include the recommended county cost reimbursement terms, and no party raised the omission at the hearing.
The same day (May 2, 2016), the juvenile court issued a written "ORDER AFTER HEARING" signed by the judge. The written order did include the *257 cost reimbursement provisions recommended in the probation officer's report. As relevant here, the order stated: "Parent/Legal Guardian recommendations: [¶] [Minor's] parent(s) ... shall [¶] .... [¶] be required to reimburse the County of Napa for legal costs incurred, including $250, in an amount and manner to be determined . [Minor's] parent(s), if requested to do so, shall appear before the Financial Hearing Officer." (Italics added.)
The probation officer later submitted a report for the September 7, 2016 dispositional hearing. As before, the report attached recommended terms and conditions, including a recommendation involving reimbursement of certain county costs. At the subsequent hearing, the juvenile court judge again listed and adopted most of the terms and conditions the probation officer had recommended, paraphrasing them, but did not include the reimbursement recommendations. As before, no party raised the omission at the hearing.
The same day (September 7, 2016), the juvenile court issued a written order signed by the judge. It included the cost reimbursement provisions recommended in the probation officer's report. As relevant here, the written order stated: "Parent/Legal Guardian recommendations: [¶] [Minor's] parent(s) or legal guardian shall [¶] ... be required to reimburse the County of Napa for legal costs incurred, including $600, in an amount and manner to be determined . [Minor's] parent(s), if requested to do so, shall appear before the Financial Hearing Officer; (mandatory) [¶] ...." (Italics added.)
2. The Juvenile Court Made No Binding Ruling Regarding Minor's Parents' Reimbursement Obligations
As noted, Minor contends there is a conflict between (1) the reporters' transcripts, providing the record of the juvenile court's oral pronouncements at the dispositional hearings, and (2) the clerk's transcript, containing the written orders issued after the hearings. The written orders include " '[r]ecommend[ations]' " that Minor's parents be ordered to reimburse the costs of legal services provided to him, Minor points out, and this was error, he asserts, because the juvenile court could have, but did not, include such a requirement in its oral pronouncements at the hearings. The written record does not accurately reflect the juvenile court's orders, therefore, Minor submits, and the conflict is best resolved by giving credence to the record contained in the reporters' transcripts. We do not agree.
"The California Supreme Court has ... stated that 'a record that is in conflict will be harmonized if possible.' " ( People v. Contreras (2015) 237 Cal.App.4th 868, 880, 188 Cal.Rptr.3d 698, citing, inter alia, People v. Harrison (2005) 35 Cal.4th 208, 226, 25 Cal.Rptr.3d 224, 106 P.3d 895.) If that is not possible, however, "we do not automatically defer to the reporter's *258 transcript, but rather adopt the transcript that should be given greater credence under the circumstances of the particular case. [Citation.]" ( *889 People v. Contreras , supra , at p. 880, 188 Cal.Rptr.3d 698.) In his reply brief, Minor cites People v. Mesa (1975) 14 Cal.3d 466, 121 Cal.Rptr. 473, 535 P.2d 337 ( Mesa) (superseded by statute on another ground as explained in People v. Turner (1998) 67 Cal.App.4th 1258, 1268, 79 Cal.Rptr.2d 740 ), contending we must give greater credence here to the reporter's transcript. But the facts in Mesa were distinguishable.
In Mesa , the Supreme Court struck from a minute order and an abstract of judgment references to a prior felony conviction that the defendant had admitted, because the trial judge did not mention the prior conviction when orally pronouncing the judgment. ( Id . at pp. 470-471, 121 Cal.Rptr. 473, 535 P.2d 337.) The reference in the minute order was not controlling, the court reasoned, because " '[r]endition of judgment is an oral pronouncement,' " while "[e]ntering the judgment in the minutes [is] a clerical function [citation]." ( Id . at p. 471, 121 Cal.Rptr. 473, 535 P.2d 337.) "[A] discrepancy between the judgment as orally pronounced and as entered in the minutes[, therefore,] is presumably a result of clerical error," the court concluded. ( Ibid . ) The abstract of judgment also was not controlling, the court concluded, because " '[b]y its very nature, definition and terms [citation] [the abstract] cannot add to or modify the judgment which it purports to digest or summarize.' [Citation.]" ( Ibid . )
The facts here are different because the asserted conflicts are between the conditions of probation that the juvenile court judge orally imposed at the hearings and the conditions of probation that the judge approved in its later written orders. Entry of a written order signed by a judge is not a ministerial act. ( In re Jerred H. (2004) 121 Cal.App.4th 793, 798, fn. 3, 17 Cal.Rptr.3d 481.) Consequently, these changes cannot be dismissed as clerical errors. Rather, the record indicates the juvenile court modified its orders imposing probation conditions, which it had authority to do. ( People v. Thrash (1978) 80 Cal.App.3d 898, 900-901, 146 Cal.Rptr. 32.)
We reject Minor's argument, therefore, to the extent he contends the juvenile court erred in issuing its written dispositional orders in May 2016 and September 2016. We agree with him, however, to the extent he asserts the juvenile court made no binding ruling regarding his parents' reimbursement obligations. That is because we read the dispositional orders in the context of the statutory framework that existed at the time the juvenile court issued them.
*259 In 2016, subdivision (a) of Welfare and Institutions Code [7] section 903.1 made a parent liable for costs that a county incurred in rendering legal services to the parent's child "by an attorney pursuant to an order of the juvenile court." ( § 903.1, subd. (a), as amended by Stats. 2009, ch. 413, § 1;[8] see In re S.M. (2012) 209 Cal.App.4th 21, 26, 146 Cal.Rptr.3d 659 (S.M. ).) Section 903.45, subdivision (b), required compliance with a specified procedure, however, before a juvenile court could order a parent to pay such costs. In 2016, section 903.45, subdivision (b) provided in pertinent part as follows:
*890 "[T]he juvenile court shall, at the close of the disposition hearing, order any person liable for ... the cost of legal services as provided for in Section 903.1, ... to appear before the county financial evaluation officer for a financial evaluation of his or her ability to pay those costs ....
"If the county financial evaluation officer determines that a person so responsible has the ability to pay all or part of the costs, the county financial evaluation officer shall petition the court for an order requiring the person to pay that sum to the county .... A person appearing for a financial evaluation has the right to dispute the county financial evaluation officer's determination, in which case he or she is entitled to a hearing before the juvenile court ....
"At the hearing, a person responsible for costs is entitled to ... be heard in person, to present witnesses and other documentary evidence, to confront and cross-examine adverse witnesses, to disclosure of the evidence against him or her, and to receive a written statement of the findings of the court. The person has the right to be represented by counsel, and, if the person is unable to afford counsel, the right to appointed counsel. If the court determines that the person has the ability to pay all or part of the costs, ... the court shall set the amount to be reimbursed and order him or her to pay that sum ...."[9] (Stats.
*260 2013, ch. 31, § 26 [§ 903.45, subd. (b) ].) Under section 903.45, subdivision (d), execution could "be issued on the order in the same manner as on a judgment in a civil action, including any balance remaining unpaid at the termination of the court's jurisdiction over the minor." (§ 903.45, subd. (d); Stats. 2013, ch. 31, § 26.)
Nothing in the record before us suggests that the juvenile court complied with this mandatory provision, which both parties omitted to mention in their regular appellate briefs. In particular, there is no indication in the record that the county financial evaluation officer ever held any hearing or made any determination regarding the parents' ability to pay the costs of legal services provided to Minor, or ever petitioned the court for an order requiring the parents to pay a specific sum. Nor is there any indication the court ever ordered Minor's parents to pay a specific sum. Rather, considering the juvenile court's written dispositional orders in the context of the statutory framework, we conclude the dispositional orders are properly interpreted as preliminary findings that the county incurred costs totaling $850 in providing legal services to Minor ($250 for the May 2016 dispositional hearing and $600 for the September 2016 hearing), and-at most-as referrals to the county financial evaluation officer for a determination of Minor's parents' ability to pay those costs. Both dispositional orders explicitly stated that the amount of Minor's parents' payment obligation remained *891 "to be determined ." (Italics added.) Any claim that the juvenile court erred in ordering Minor's parents to reimburse the county's legal costs, therefore, was premature and we reject it, because no final order for payment has yet been entered.[10] The May 2, 2016 and September 7, 2016 dispositional orders must be clarified to establish that the juvenile court's statements in paragraph 7 of each order do not obligate Minor's parents to pay Minor's legal costs.
3. Recent Statutory Amendments Preclude A Future Order Compelling Minor's Parents To Pay His Legal Costs
Because a question is likely to arise, as a result of this decision, about whether the juvenile court may still require Minor's parents to pay the legal costs specified in the May and September 2016 dispositional orders, in the *261 interests of judicial economy, we next address that question. The question arises because, while this appeal was pending, the Legislature enacted Senate Bill No. 190 (Stats. 2017, ch. 678), which, among other things, amended sections 903.1 and 903.45. (Id ., §§ 20, 25.5.) The amendments to section 903.1 repealed the provision requiring a parent to reimburse the county for the costs of legal services provided to a minor who is subject to the juvenile delinquency system. (Legis. Counsel's Dig., Sen. Bill No. 190, Stats. 2017, ch. 678, par. 4.) Senate Bill No. 190 was enacted in a regular session, and was not passed as an urgency measure, so became effective on January 1, 2018. (See People v. Douglas M. (2013) 220 Cal.App.4th 1068, 1076, fn. 5, 163 Cal.Rptr.3d 658.) We requested supplemental briefing from the parties about whether Minor's parents could still be held liable for paying the costs of legal services previously rendered to Minor following enactment of Senate Bill No. 190. Minor answered the question in the negative, citing the statutory repeal rule and principles of statutory interpretation and legislative intent. The Attorney General argued the opposite. We agree with Minor.
The Senate Rules Committee Bill digest addressing Senate Bill No. 190 stated that the bill "limit[ed] the authority of local agencies to assess and collect specified fees against families of persons subject to the juvenile delinquency system." (Sen. Rules Com., Off. of Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 190 (2017-2018 Reg. Sess.) as amended Aug. 28, 2017.)[11] Among other things, the bill repealed statutory provisions that made parents and others who were responsible for supporting "a ward, dependent child, or other minor person," liable *892 for reimbursing a wide variety of costs, including: the reasonable costs of transporting a minor to a juvenile facility; the costs of the minor's food, shelter, and care while in temporary custody at a juvenile facility; the costs of supporting a minor while "placed, detained in, or committed to, any institution or other place" pursuant to law or juvenile court order; the cost of a court-designated alcohol or drug education program; "the cost of probation supervision, home supervision, or electronic surveillance of the minor, pursuant to the order of the juvenile court"; and the cost of a service program. (Legis. Counsel's Dig., Sen. Bill No. 190, Stats. 2017, ch. 678, par. 4.) *262 As noted, Senate Bill No. 190 also amended section 903.1, by repealing the provision that held parents and others liable for the cost of "legal services rendered to [a] minor by an attorney pursuant to an order of the juvenile court." (Legis. Counsel's Dig., Sen. Bill No. 190, Stats. 2017, ch. 678, par. 4; compare Stats. 2017, ch. 678, § 20, with Stats. 2009, ch. 413, § 1.) Senate Bill No. 190 effected this change by adding a new subdivision (a)(1) to section 903.1. (See Historical and Statutory Notes, 73B Pt. 1 West's Ann. Welf. & Inst. Code (2018 supp.) foll. § 903.1, p. 24.) As so amended, the section now states that parents and others are liable "for the cost ... of legal services rendered to the minor" (subd. (a)(1)(A) ), with the exception that the paragraph "does not apply to a minor who is adjudged a ward of the juvenile court, who is placed on probation pursuant to Section 725 , who is the subject of a petition that has been filed to adjudge the minor a ward of the juvenile court, or who is the subject of a program of supervision undertaken pursuant to Section 654" (subd. (a)(1)(B)(i) ).[12] ( § 903.1, subd. (a), italics added.)
A Senate Third Reading Analysis provided comments from the bill author with the following explanation of Senate Bill No. 190's purpose: " 'A recent study by the Policy Advocacy Clinic at University of California Berkeley School of Law has found that imposing administrative fees to families with youth in the juvenile justice system is harmful, unlawful, and costly. Current California law allows counties to charge administrative fees, which can quickly add up to thousands of dollars, an incredible burden to families with youth in the juvenile justice system. In fact, such criminal justice debt undermines the rehabilitative goals of the juvenile justice system and leads to increased recidivism .... Most youth in the juvenile justice system come from poor families who cannot afford to pay fees, and counties ultimately obtain minimal returns despite the high fiscal and societal costs associated with collecting fees. Counties cannot continue to balance their books on the back[s] of poor people. This bill would end the assessment of administrative fees against families with youth in the juvenile justice system. By doing so, it will eliminate a source of financial harm to some of the state's most vulnerable families, support the reentry of youth back into their homes and communities, and reduce the likelihood that youth will recidivate .' " (Sen. Rules Com., Off. Of Sen. Floor Analyses, 3d Reading Analysis of Sen. Bill No. 190 (2017-2018 Reg. Sess.) as amended Aug. 28, 2017, pp. 3-4, italics added.) In the "Comments" section of its analysis of Senate Bill No. 190, the Assembly Appropriations Committee quoted the Juvenile Court Judges of California: " 'Based upon our collective experience, *893 imposing fines and fees upon the family of a young person who is moving through the juvenile justice *263 system is overreaching and punitive upon a population of families that is already facing multiple economic challenges to raise a family in our state.' " (Assem. Appropriations Com., Analysis of Sen. Bill No. 190 (2017-2018 Reg. Sess.) as amended July 13, 2017, Comments, ¶ 2.)
Minor contends that the statutory repeal rule applies to preclude any future juvenile court order directing his parents to pay the costs of legal services provided to him in 2016. He cites Governing Board v. Mann (1977) 18 Cal.3d 819, 135 Cal.Rptr. 526, 558 P.2d 1 ( Mann ). The California Supreme Court there affirmed "[a] long well-established line of California decisions .... hold[ing] under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.' [Citation.]" ( Id . at p. 829, 135 Cal.Rptr. 526, 558 P.2d 1 ; see also, e.g., Beckman v. Thompson (1992) 4 Cal.App.4th 481, 489, 6 Cal.Rptr.2d 60.) " ' "If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered ." ' " ( Mann , supra , at pp. 822-823, 830-831, 135 Cal.Rptr. 526, 558 P.2d 1, italics added, quoting Southern Service Co., Ltd. v. Los Angeles (1940) 15 Cal.2d 1, 11-12, 97 P.2d 963.) " 'The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time.' [Citation.]" ( Mann , supra , at p. 829, 135 Cal.Rptr. 526, 558 P.2d 1.)
"This general common law rule has been applied in a multitude of contexts," Mann observed, citing a host of cases. ( Mann , supra , 18 Cal.3d at p. 829, 135 Cal.Rptr. 526, 558 P.2d 1 ; id . at pp. 829-830 & fn. 8, 135 Cal.Rptr. 526, 558 P.2d 1.) One of those cases, Napa State Hospital v. Flaherty (1901) 134 Cal. 315, 66 P. 322 ( Napa State Hospital ) (modified on another ground in Napa State Hospital v. Yuba County (1903) 138 Cal. 378, 380-381, 71 P. 450 ), is noteworthy here. As Mann observed in a parenthetical, Napa State Hospital involved the repeal of a statutory right to charge a parent for services provided to the parent's child. ( Mann , supra , at p. 830, fn. 8, 135 Cal.Rptr. 526, 558 P.2d 1 ; see Napa State Hospital , supra , at pp. 316-317, 66 P. 322.) The Legislature had enacted a law for the government of state mental hospitals, and it repealed all existing laws that conflicted with the new law. ( Napa State Hospital , supra , 134 Cal. at p. 317, 66 P. 322.) Based on that legislative action, the California Supreme Court affirmed an order sustaining a father's demurrer to the complaint that a state mental hospital had filed against him. ( Id . at pp. 316-317, 66 P. 322.) The complaint relied on an earlier statute, which had required parents to reimburse state mental hospitals for costs the hospitals incurred in caring for the parents' children following the children's commitment. ( Id . at p. 316, 66 P. 322.) In sustaining the demurrer after the new law was enacted, the Supreme Court reasoned, "It is a rule of almost universal application that where a right is created solely by a statute, and is dependent upon the statute *264 alone, and such right is still inchoate, and not reduced to possession or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause. [Citation.] ... '[I]t must be considered as a law that never existed, except *894 for the purpose of those actions which were commenced, prosecuted, and concluded whilst it was an existing law.' " ( Id . at pp. 317-318, 66 P. 322 ; see also, e.g., Beverly Hilton Hotel v. Workers' Comp. Appeals Bd. (2009) 176 Cal.App.4th 1597, 1602, 1611-1612, 99 Cal.Rptr.3d 50 [annulling Workers' Compensation Appeals Board finding that an applicant was entitled to vocational rehabilitation benefits because the statute conferring the benefits was repealed before the judgment became final through the appellate process].)
Applying the principles stated in Mann and Napa State Hospital , supra , because no final order was entered in this case requiring Minor's parents to pay the $850 in legal costs before Senate Bill No. 190 became effective, we must dispose of this case under the law that is currently in force. ( Mann , supra , 18 Cal.3d at pp. 822-823, 135 Cal.Rptr. 526, 558 P.2d 1 ; Napa State Hospital , supra , 134 Cal. at p. 317, 66 P. 322.) That law directs that section 903.1, subdivision (a)(1)(A), which holds parents liable for the cost of legal services provided to their children under order of the juvenile court, "does not apply to a minor who is adjudged a ward of the juvenile court ... [or] who is placed on probation pursuant to Section 725 ...." ( § 903.1, subd. (a)(1)(B)(i).) As Minor here has been adjudged a ward of the juvenile court and has been placed on probation, section 903.1, subdivision (a)(1)(A) does not apply to him and his parents may not be held liable for the costs of legal services provided to him.
Without directly addressing the statutory repeal rule in his simultaneously filed supplemental brief, the Attorney General opposes this conclusion, contending Senate Bill No. 190 must be applied prospectively. Even if we were not convinced that the statutory repeal rule applied here, however, we would reject this argument because it relies on a flawed premise. The Attorney General characterizes the juvenile court's May and September 2016 dispositional orders as determinations that Minors' parents were obligated to pay the cost of the legal services provided to Minor. Without acknowledging the requirements of section 903.45, subdivision (b), set forth above, the Attorney General implies the parents were immediately responsible for paying the total cost of the legal services provided to Minor in full and outright, even though there is no record the county financial evaluation officer or the juvenile court ever evaluated their ability to pay, as required.[13] (Stats. 2013, ch. 31, § 26 [ § 903.45, subd. (b) in 2016]; § 903.45, subd. (b)(1)(A).)
*265 As discussed, we interpret the dispositional orders differently, concluding they only established the total cost of the legal services provided to Minor for the May and September 2016 dispositional hearings. Both dispositional orders explicitly confirmed that the "amount and manner" of Minor's parents' payment obligations remained "to be determined." We conclude, therefore, that the orders are best understood as constituting the initial step in the statutory procedure described in section 903.45, and not as final rulings by the juvenile court requiring the parents to pay a specified sum to the county "in a manner that is reasonable and compatible with [their] financial ability." (Stats. 2013, ch. 31, § 26 [ § 903.45, subd. (b) in 2016]; see also, § 903.45, subd. (b)(5).) Any final ruling the juvenile court might now be asked to make on a petition from the county financial evaluation officer, therefore, *895 necessarily would require a prospective application of Senate Bill No. 190, the law that is now in effect. (See, e.g., People v. Superior Court (Lara ) (2018) 4 Cal.5th 299, 307, 228 Cal.Rptr.3d 394, 410 P.3d 22 [" 'The Legislature ordinarily makes laws that will apply to events that will occur in the future' "].)
IV. DISPOSITION
We strike the condition in the juvenile court's September 7, 2016 dispositional order that Minor must "submit all electronic devices under [his] control to search and seizure by the probation officer .... [and] disclose any and all passwords, passcodes, password patterns, fingerprints, or other information required to gain access into any of" his electrical devices. Additionally, paragraph 7.b. of the May 2, 2016 dispositional order, and paragraph 7.a. of the September 7, 2016 dispositional order are modified to clarify that they do not require Minor's parents to reimburse the county for Minor's legal fees.
We concur:
Streeter, Acting P.J.
Reardon, J.

Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The facts here are undisputed and are taken from the probation officer's detention report.

The truancy count was dismissed after the juvenile court determined that Minor voluntarily had enrolled in summer school and that his attendance therefore was not a probation condition. Minor's mother explained that he missed school because he wanted to work to help his family financially. The count for being discharged from a treatment program was dismissed because Minor returned to the program.

See footnote *, ante .

All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

In 2016, section 903.1, subdivision (a) provided in pertinent part as follows: "The father, mother, spouse, or other person liable for the support of a minor ... shall be liable for the cost to the county or the court, whichever entity incurred the expenses, of legal services rendered to the minor by an attorney pursuant to an order of the juvenile court ...." (Stats. 2009, ch. 413, § 1.)

Similar procedural requirements apply under Penal Code section 987.8 where a criminal defendant is provided legal assistance through the public defender or court-appointed private counsel. (See Pen. Code, § 987.8, subds. (b), (e) ; People v. Verduzco (2012) 210 Cal.App.4th 1406, 1420, 149 Cal.Rptr.3d 200 [An order that a criminal defendant reimburse the costs of legal assistance provided to him or her "can be made only if the court concludes, after notice and an evidentiary hearing, that the defendant has 'the present ability ... to pay all or a portion' of [those] costs"].) In that context, as here, if a court fails to hold the hearing required by statute, it may not order the person to reimburse the legal costs. (See, e.g., People v. Gonzales (2017) 16 Cal.App.5th 494, 505, 224 Cal.Rptr.3d 421 ; People v. Webb (2017) 13 Cal.App.5th 486, 499, 220 Cal.Rptr.3d 679, disapproved on another ground in People v. Ruiz (2018) --- Cal.5th ----, 232 Cal.Rptr.3d 714, 417 P.3d 191.)

In light of this conclusion, we need not address the Attorney General's contentions that Minor lacks standing to challenge the asserted orders requiring his parents to pay for legal services provided to him, and that Minor forfeited the right to challenge one of those asserted orders. We also reject the Attorney General's contention that Minor's parents were obligated to pay the costs of the legal services even if they were not ordered to do so by the court, because the statutory framework just discussed clearly contemplates and requires an order of the juvenile court following an evaluation of a parent's ability to pay. (2009, ch. 413, § 1 [§ 903.1 ]; Stats. 2013, ch. 31, § 26 [§ 903.45].)

In their supplemental briefs, the parties direct our attention to materials included in the legislative history of Senate Bill No. 190, which are proper sources of legislative intent. (See, e.g., Jones v. Lodge at Torrey Pines Partnership (2008) 42 Cal.4th 1158, 1169, 72 Cal.Rptr.3d 624, 177 P.3d 232 [discussing Legislative Counsel's digest, third reading analysis, committee reports, and other sources].) On the court's own motion, we take judicial notice of the materials that we cite in this decision. (Evid. Code, §§ 452, subd. (c), 459 ; Martin v. PacifiCare of California (2011) 198 Cal.App.4th 1390, 1402, fn. 7, 130 Cal.Rptr.3d 714.)

But see § 903.1, subd. (a)(1)(B)(ii) (section 903.1, subdivision (a)(1) does apply "to a minor who is designated as a dual status child pursuant to Section 241.1, for purposes of the dependency jurisdiction only and not for purposes of the delinquency jurisdiction").

Evidence in the record indicated that Minor's mother previously worked in the fields but had been unemployed for some time.