Filed 5/7/21  In re A.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | C088842 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.F.,<br><br>Defendant and Appellant. | (Super. Ct. No. PDL20180063) |

In a Welfare and Institutions Code section 602 proceeding, the minor A.F. admitted an allegation that he committed felony vandalism (Pen. Code, § 594, subd. (b)(1))[1] and was declared a ward of the court.  Following a contested jurisdiction hearing, he was found to have committed assault with a deadly weapon.  (§ 245, subd. (a)(1).) The juvenile court reduced the assault charge to a misdemeanor and placed him on probation.

---

[1]     Undesignated statutory references are to the Penal Code.

1

On appeal, the minor contends: (1) there is insufficient evidence to support the assault with a deadly weapon finding; (2) there was insufficient evidence to support a finding that he appreciated the wrongfulness of his actions; (3) the minutes must be reconciled with the juvenile court's oral rendition of judgment; and (4) the probation condition prohibiting possession of weapons is unconstitutionally vague and overbroad. We shall modify the weapons condition and affirm.

BACKGROUND

The minor lived in an El Dorado County mobile home with his grandfather Jerry F. and his cousin Arianna F. On November 2, 2018, the minor, while inside the mobile home, became angry after Jerry threw away his marijuana. He cursed at his grandfather and started breaking things, after which he began running around and swinging a golf club.

The minor swung the golf club multiple times in Jerry's presence. According to Jerry's testimony, he was no more than five to eight feet away from the minor. The minor told his grandfather, "stay the 'f' away from me." The minor also yelled at Jerry that he hated him and did not want to live with him anymore. Arianna entered the mobile home and stood off to the side, next to her grandfather. She testified that the minor was close enough to hit Jerry with the club. The minor told Jerry something to the effect of he wished that Jerry was dead or that he was going to kill him. He also hit a wall with the golf club, making a hole in the sheetrock. Jerry called the sheriff.

The minor eventually went outside, closing the door behind him, hitting it with the golf club. He continued to swing the golf club when he got outside. The minor struck an old washer/dryer, broke windows, and dented two mobile homes on the property. Jerry called 911 again.

Jerry, accompanied by Arianna, went outside to see if law enforcement had arrived. The minor was swinging the golf club "full on" in every direction, including at Arianna and Jerry. When Jerry told the minor to calm down, he became more agitated.

2

Arianna put herself in a protective position between the minor and her grandfather so the minor would not strike him. The minor was at ground level while Jerry and Arianna were on the deck, about two and one-half feet above the minor.

The minor swung the golf club at Jerry and Arianna, missing them by a couple of feet. The minor, who was six to eight feet away from Jerry, continued to tell his grandfather to stay away from him.

Jerry followed the minor as the minor was "starting to go." The minor swung the golf club at Jerry again, but Jerry moved away. The minor hit another mobile home so hard that the golf club stuck in the wall. Jerry took the club out of the wall and threw it onto the roof. The minor went around the mobile home, broke a window, climbed the roof, and retrieved the golf club. He started swinging the club again, hitting something so hard that the club broke. The minor started running away when law enforcement arrived.

DISCUSSION

I

The minor contends there is insufficient evidence to support the finding that he committed assault with a deadly weapon. We disagree.

"The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases: we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable fact finder could find guilt beyond a reasonable doubt. [Citations.]" (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

Assault is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) Assault with a deadly weapon is "an assault upon the person of another with a deadly weapon . . . ." (§ 245, subd. (a)(1).) The mental state for assault requires "actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." (*People v. Williams* (2001) 26 Cal.4th 779, 782.)

3

An "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury may occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams, supra*, 26 Cal.4th at p. 790.) "The pivotal question is whether the defendant intended to commit an act likely to result in . . . physical force, not whether he or she intended a specific harm. [Citation.]" (*People v. Colantuono* (1994) 7 Cal.4th 206, 218, fn. omitted.)

"It is not necessary, in order to complete the offense of assault with a deadly weapon, that the intended victim be actually injured." (*People v. Ingram* (1949) 91 Cal.App.2d 912, 914.) Indeed, "[o]ne may commit an assault without making actual physical contact with the person of the victim; because the statute focuses on *use* of a deadly weapon or instrument or, alternatively, on force to produce great bodily injury, whether the victim in fact suffers any harm is immaterial. [Citation.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)

The minor's argument centers on testimony of Jerry and Arianna that the minor was never close enough to Jerry for the golf club to actually hit him, getting no closer than two to three feet from him. Arianna also testified that the minor could have hit them with the club if he wanted to do so, but he never advanced on them. Finding it was physically impossible for him to have hit his grandfather with the golf club during the incident, the minor concludes there was insufficient evidence to support a finding that he had a present ability to supply force with a deadly weapon.

During direct examination, the prosecutor asked Jerry whether, in his statement to the investigating deputy, he said the minor " 'exited the residence and swung the golf club at me.' You moved and [the minor] missed. The golf club went through the exterior wall on the trailer of the residence and got stuck; is that right?" Jerry affirmed saying this to the deputy. The investigating deputy testified that Jerry told him the minor swung the

golf club at him multiple times, and Arianna told the deputy the minor swung the golf club at her grandfather.

The trier of fact does not have to either completely accept or completely reject a witness's testimony.  (See *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1294 ["jurors could accept in part and reject in part any witness's testimony"].)  The juvenile court did so here, finding Jerry and Arianna's rendition of the incident generally credible except that they had made "a loving minimization of what happened in this particular case, especially in light of the officer's testimony."

The juvenile court was free to find Jerry and Arianna's statements to the deputy more credible than their trial testimony regarding the threat posed by the minor swinging the golf club.  Those statements show that the minor swung the club at Jerry, causing him to dodge away from it, and the club struck the exterior wall of a trailer with sufficient force to lodge in it.  That is substantial evidence to support the true finding on the assault with a deadly weapon allegation.

## II

The minor was 13 years old when he committed the charged offenses.  He contends there is insufficient evidence to support a finding that he understood the wrongfulness of his conduct underlying the assault with a deadly weapon allegation.

Children under age 14 are presumed incapable of committing crimes in the absence of clear proof that at the time of committing the act charged, they knew of its wrongfulness.  (§ 26.)  In determining whether a minor was aware of the wrongfulness of his actions, the juvenile court must consider the minor's age, experience, and understanding.  (*In re Gladys R.* (1970) 1 Cal.3d 855, 864.)  Circumstantial evidence based on the method of commission of the crime and concealment after the fact is often used to determine the minor's state of mind.  (*In re Tony C.* (1978) 21 Cal.3d 888, 900.)  The juvenile court's finding on the issue will be upheld if supported by substantial evidence.  (*In re Paul C.* (1990) 221 Cal.App.3d 43, 52.)

The minor fled when law enforcement personnel arrived at the scene. Flight from law enforcement is evidence of a guilty mind (§ 1127c; *People v. Garrison* (1989) 47 Cal.3d 746, 773) and thus supports an inference that the minor knew he did something wrong when he attacked his grandfather and his grandfather's property. Substantial evidence supports the juvenile court's implicit finding that the minor was capable of committing the allegations.[2]

### III

The minor contends that multiple discrepancies between the juvenile court's oral pronouncement of the probation conditions and the clerk's minutes must be corrected.

While the minor purports to challenge the clerk's minutes, what he actually challenges is the disposition order signed by the juvenile court and the written probation order attached to it. The disposition order specifically refers to the attached form which states the probation conditions. The form includes various standard probation conditions, some, but not all of which have written check marks next to them, and some of those have additional information added by the juvenile court, such as adding marijuana to the list of intoxicating substances he is prohibited from using or possessing, and requiring him to be at his residence between 8:00 p.m. and 6:00 a.m.

The rule that a court's oral pronouncement of judgment controls over the minute order is based on the minute order being a ministerial act; any discrepancy between the

---

[2]    After making its jurisdictional findings, the juvenile court indicated it would determine whether the assault charge would be a misdemeanor or a felony and determine what disposition it would order after hearing from the minor. At the disposition hearing the following day, the juvenile court, over the objection of minor's counsel and the prosecutor, elicited from the minor that it was wrong to swing the golf club at his grandfather. We agree with the minor and the Attorney General that this statement was compelled and therefore cannot support any finding that the section 26 presumption had been overcome. Since this statement was elicited after the juvenile court sustained the assault allegation, there is no reason to believe the court used this improper evidence.

6

clerk's minute's and a court's oral judgment is presumed to be a clerical error in the former. (See *People v. Scott* (2012) 203 Cal.App.4th 1303, 1324 [" 'To the extent a minute order diverges from the sentencing proceedings it purports to memorialize, it is presumed to be the product of clerical error' "].) However, a court's written probation order is not a ministerial act.

"The facts here are different because the asserted conflicts are between the conditions of probation that the juvenile court judge orally imposed at the hearings and the conditions of probation that the judge approved in its later written orders. Entry of a written order signed by a judge is not a ministerial act. [Citation.] Consequently, these changes cannot be dismissed as clerical errors. Rather, the record indicates the juvenile court modified its orders imposing probation conditions, which it had authority to do. [Citation.]" (*In re D.B.* (2018) 24 Cal.App.5th 252, 258.)

The minor claims the court's order delaying his driver's license until he was 18 conflicts with the juvenile court's oral judgment, as the court struck the condition at the disposition hearing. The minor is correct that the juvenile court specifically rejected this at disposition. However, the disposition order is not in conflict; the juvenile court initially checked the box for this disposition, but then crossed out the box authorizing it. Nothing more is needed.

Next, the minor claims the dispositional order committed him to juvenile hall for a time not to exceed 194 days with 75 days of credit for time served was not pronounced by the juvenile court at disposition. At disposition, the juvenile court stated the minor was subject to a commitment of 120 days plus 75 days. Minor's counsel replied, "I thought we didn't do the 120; we did 15-day reviews." The prosecutor agreed. The juvenile court replied, "Okay. Let's do 15-day reviews. I'll strike that and say he has 75 day credits, and we'll set a review as noted and if he's not placed in a short period of time, you know, then we need to figure out some other strategy."

7

The written order does not conflict with the oral order here. It states the minor is committed "NTE" 194 days in juvenile hall with 75 days of credits. That indicates the minor's commitment will not exceed this period, and is thus subject to the periodic review indicated in the juvenile court's oral judgment.[3]

The minor also contends the written search condition contradicts the oral judgment as it includes searches of the minor's vehicle. The written search condition states in pertinent part that the minor be "subject to search and/or seizure of his person, vehicle, or place of residence, or any other place under his or her control" without a warrant or probable or reasonable cause. In discussing the search condition with the minor, the juvenile court stated, "And I assume you don't have a—you don't have a car yet?" The minor indicated he did not.

There is no discrepancy. While the juvenile court verified that the 13-year-old minor did not own a vehicle, the exchange does not indicate it was striking this part of the search condition.

At disposition, the juvenile court told the minor, "You can't have any firearms or weapons." He claims this conflicts with the written probation condition, which states: "Not possess, own, or handle any firearm, knife, weapon, fireworks, explosives, or chemicals that can produce explosives."

The parties were aware of the written conditions at disposition. When the juvenile court brought up the proposed driver's license restriction, it told minor's counsel this was "item 16 in your report." The driver's license restriction is item 16 in the written disposition order. As previously noted, this order, signed and filled out by the juvenile court, specifically refers to the attached written probation conditions. It is therefore

---

[3] At disposition, the juvenile court also set a date for the 15-day review hearing, which is also reflected in the clerk's minutes.

reasonable to infer the parties were aware of the written probation conditions, including the three that the minor contests.

Probation conditions "need not be spelled out in great detail in court as long as the defendant knows what they are; to require recital in court is unnecessary in view of the fact the probation conditions are spelled out in detail on the probation order and the probationer has a probation officer who can explain to him the contents of the order." (*People v. Thrash* (1978) 80 Cal.App.3d 898, 901.) The weapons condition in the written order is part of a preprinted written form. Since the parties were aware of this condition at disposition, we conclude the juvenile court was summarizing the condition rather than modifying it when it addressed the condition with the minor.

Finally, the minor asserts three conditions in the written order, relating to limits on the minor's presence on school grounds, requiring him to issue a written apology to his grandfather, and to participate in a juvenile court work program for 10 days, are invalid because they were not mentioned in the oral judgment. Since the minor was (through counsel) aware of these written conditions, we will not strike them simply because they were not specifically mentioned by the juvenile court at disposition.

IV

The minor's final contention is that the weapons condition is unconstitutionally vague and overbroad because it can be violated by possession of common household items without regard as to whether they could actually be used as weapons. He gives as examples, knives used for cutting a steak or whittling wood, or household chemicals that could be used to make explosives such as vinegar, dish soap, or bleach. He asks us to modify the condition to read: "Not to possess, own, or handle any dangerous or deadly weapons, including firearms."

" '[A] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' [Citations.]" (*People v. Olguin* (2008)

9

45 Cal.4th 375, 384.) "A restriction is unconstitutionally overbroad . . . if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.]" (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.) A restriction " 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated' " to withstand a vagueness challenge. (*People v. Relkin* (2016) 6 Cal.App.5th 1188, 1194.) Whether such a condition is vague or overbroad presents a question of law, which we review de novo. (*People v. Martinez* (2014) 226 Cal.App.4th 759, 765.)

Under California law, "There are two categories of 'dangerous or deadly weapons.' First, there are those instrumentalities which are weapons in the strict sense of the word, such as guns, dirks, etc. Second, there are those instrumentalities which are not weapons in the strict sense of the word, but which *may* be used as such, such as razors, pocketknives, hat pins, canes, hammers, hatchets, and other sharp or heavy objects. These are not weapons in the strict sense of the word and are not 'dangerous or deadly' to others in the ordinary use for which they are designed. As such they may not be said as a matter of law to be dangerous or deadly weapons. The instrumentalities falling in the first classification are weapons in the strict sense of the word and are 'dangerous or deadly' to others in the *ordinary use* for which they are designed and may be said as a matter of law to be dangerous or deadly weapons. [Citation.] When it appears that an instrumentality other than one falling within the first category is *capable* of being used in a dangerous or deadly manner, *and* it may be *fairly inferred* from the evidence that its possessor *intended* on a particular occasion to use it as a weapon should the circumstances require, its character as a dangerous or deadly weapon may be established, at least for the purposes of that occasion. [Citations.]" (*People v. Reid* (1982) 133 Cal.App.3d 354, 365; accord, *People v. Godwin* (1996) 50 Cal.App.4th 1562, 1574.)

Although the minor used an item with primarily nonviolent uses, a golf club, to assault his grandfather, the condition at issue here, that the minor "Not posses, own, or handle any firearm, knife, weapon, fireworks, explosives, or chemicals that can produce explosives," prohibits the innocent use of everyday items such as soap or a dining knife. Without modification, it sweeps far broader than its legitimate purpose and leaves the minor uncertain as to what he can possess under the condition.

Limiting the condition to prohibiting the possession of dangerous or deadly weapons cures the vagueness and overbreadth problems while advancing the legitimate purpose of preventing the minor from possessing instruments through which he can cause harm. The other phrase suggested by the minor, "including firearms" is unnecessary, as firearms are inherently dangerous or deadly. We shall modify the condition so it reads as follows: "Not to possess, own, or handle any dangerous or deadly weapons."

## DISPOSITION

The order of probation preventing the possession of weapons by the minor is modified to read: "Not to possess, own, or handle any dangerous or deadly weapons." As modified, the judgment is affirmed. The juvenile court is directed to issue an amended probation order reflecting the modified weapons condition.


                                                  /s/
                                         BLEASE, Acting P. J.

We concur:


    /s/
ROBIE, J.


    /s/
HOCH, J.