Filed 10/14/25  In re V.D. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re V.D., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>V.D.,<br><br>        Defendant and Appellant. | A169633<br><br>(Alameda County Super. Ct. Nos. JV-029412-11 & JV-029412-12) |

V.D. appeals from the juvenile court's dispositional order continuing him as a ward of the court under Welfare and Institutions Code section 602 and committing him to a secure youth treatment facility (SYTF) for a baseline term of three years and a maximum period of confinement of five years and four months, with 776 days of predisposition custody credits and an additional six month commitment suspended, for violating an

1

order of probation on an earlier petition.[1]  He contends the juvenile court erred by imposing the suspended six-month term for the probation violation, imposing a maximum term of confinement that is past the day he reaches 23 years old, failing to award him various predisposition custody credits, and imposing a restitution fine.  The People concede that the restitution fine should be stricken and that V.D. is entitled to some, but not all, of the additional credits he claims, but otherwise oppose V.D.'s arguments.  We agree with V.D. that the suspended six-month SYTF term is unauthorized but conclude the juvenile court properly calculated the maximum term of his confinement.  We accept the People's concession of error regarding the restitution fine and some of the custody credits and remand the matter to the juvenile court for it to impose a new dispositional order and address V.D.'s claims of additional credits.

## BACKGROUND

V.D. has a history of section 602 wardship proceedings in Alameda County beginning in April 2018, with the proceedings referred to by sequential numbers in the juvenile court's records.  Most of this wardship history is irrelevant to V.D.'s arguments, so we need not discuss it in detail.  We summarize only the pertinent facts.

On January 30, 2020, V.D. absconded from his placement in Los Angeles and was picked up by the police.  V.D. was

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

transported back to Alameda County and booked into juvenile hall on February 4, 2020.

After further proceedings not relevant here, in July 2022, V.D. admitted to an allegation in Petition 10 that he had committed second degree robbery in February 2022. On July 29, 2022, the juvenile court continued him as a ward of the court and committed him to an SYTF for 18 months. The court reduced V.D.'s custody time by three months in January 2023. He completed his commitment in July 2023 and was released on probation to the home of his sister, with two periods of electronic monitoring.

After the end of the second period of electronic monitoring, V.D. was arrested in San Francisco on December 7, 2023. The San Francisco District Attorney filed a wardship petition, later numbered in Alameda County as Petition 12, alleging V.D. had committed second degree robbery and other offenses. The Alameda County District Attorney also filed a notice of probation violation, referred to as Petition 11 despite not being a true section 602 petition, alleging V.D. had violated his conditions of probation. (*In re Greg F.* (2012) 55 Cal.4th 393, 405 (*Greg F.*) ["a probation violation procedure is initiated under section 777 by the filing of a *notice*, not a petition"].)

V.D. admitted the robbery allegation in San Francisco juvenile court and was informed he faced up to three years in custody. On December 29, 2023, V.D. was transferred in custody to Alameda County for disposition. In the juvenile court in

3

Alameda County, V.D. admitted that he had violated the terms of his probation.

On January 18, 2024, the juvenile court held a disposition hearing on Petitions 11 and 12. The court advised V.D. that he faced up to five years and four months on Petition 12, not three years as the San Francisco County juvenile court had previously stated. The juvenile court offered V.D. the opportunity to return to San Francisco juvenile court and withdraw his plea, but V.D. declined and opted to proceed with disposition. The juvenile court continued V.D. as a ward of the court. It declared that his most recent adjudicated offense was second degree robbery, which was listed in section 707, subdivision (b) (section 707(b)). It committed V.D. to an SYTF. The juvenile court declared that the maximum period of confinement that could be imposed under section 875, subdivision (c) (section 875(c)) was five years and four months. The court awarded V.D. 776 days of precommitment credit. It originally set the baseline term of confinement at four years but later changed it to three years when V.D.'s counsel noted that a four-year baseline term would extend past the maximum term of confinement once precommitment credits were applied.

On Petition 11, the court found that V.D. had failed to materially comply with the terms of probation and imposed but suspended a six-month commitment. The juvenile court cautioned V.D. that if he did not demonstrate improvement at the

4

SYTF, the juvenile court could enter the six months. The court also imposed a $100 restitution fine.[2]

In July 2024, the juvenile court reduced the baseline term on Petition 12 by five months. In December 2024, the juvenile court stepped V.D. down to Camp Sweeney, a less restrictive placement.

## DISCUSSION

### I. Six-month SYTF term for probation violation

V.D. first challenges the juvenile court's imposition of a suspended six-month commitment term on Petition 11 for violating his conditions of probation. V.D. raises four different arguments in support of his contention that the six-month term exceeded the juvenile court's jurisdiction. We need not discuss all

---

[2] Our description of the juvenile court's disposition of Petition 11 follows the record of the court's oral pronouncements. We note that the juvenile court's minute order on Petition 11 does not mention a six-month suspended term and is instead substantively identical to its order on Petition 12. A later signed written order can supersede an earlier oral announcement of disposition. (*In re D.B.* (2018) 24 Cal.App.5th 252, 257–258.) The disposition order on Petition 11 bears a copy of a signature but does not indicate when the signature was added. We therefore credit the juvenile court's oral pronouncement and treat the minute order as a clerical error. (See *ibid.*)

Relatedly, the minute orders for Petitions 11 and 12 each reflect a restitution fine on Petition 12, but the reporter's transcript suggests the juvenile court imposed only a single fine on Petition 11. We again follow the juvenile court's oral statement and assume that the juvenile court imposed only one fine, but the issue is ultimately immaterial. Any restitution fines must be stricken, as we explain *post*.

5

of them because we agree that section 875 does not authorize the additional suspended six-month term.

Section 875 was enacted as part of the state's " ' "juvenile justice realignment" ' " of the most restrictive placement for juvenile offenders from the state-level Division of Juvenile Justice (DJJ) to county level SYTFs. (*In re M.B.* (2024) 99 Cal.App.5th 435, 448.) The statute allows a juvenile court to commit a ward to an SYTF if: "(1) The juvenile is adjudicated and found to be a ward of the court based on an offense listed in subdivision (b) of Section 707 that was committed when the juvenile was 14 years of age or older. [¶] (2) The adjudication described in paragraph (1) is the most recent offense for which the juvenile has been adjudicated. [¶] (3) The court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable." (§ 875, subd. (a) (section 875(a)).) Section 875, subdivision (e)(3) (section 875(e)(3)) generally requires a juvenile court to discharge a ward to probation at the conclusion of his or her baseline confinement term (discussed further *post*). Section 875, subdivision (e)(4) (section 875(e)(4)) provides that if a juvenile court later "finds that the ward has failed materially to comply with the reasonable orders of probation imposed by the court, the court may order that the ward be returned to a juvenile facility . . . for a period not to exceed either the remainder of the baseline term, including any court-ordered modifications, or six months, whichever is longer, and in any case not to exceed the maximum confinement limits of subdivision (c)."

6

In the absence of any other wardship proceedings or offenses, section 875(e)(4) would support the juvenile court's order on Petition 11. The juvenile court properly committed V.D. to an SYTF in July 2022 based on V.D.'s then-most recent February 2022 offense in Petition 10 – robbery, which is described in section 707(b). It then placed him on probation supervision after he completed his modified baseline term, just as section 875(e)(3) envisioned. Section 875(e)(4) therefore would have allowed the juvenile court to order V.D. to be returned to an SYTF for six months because of his probation violation, since six months was longer than the remainder of the completed baseline term.

However, by the time of the juvenile court's disposition hearing on Petition 11, the February 2022 robbery was no longer the most recent offense for which V.D. had been adjudicated. V.D. had committed robbery in December 2023, and the juvenile court had adjudicated that offense in the same disposition hearing by committing V.D. to an SYTF for three years on Petition 12. Because it was no longer the most recent offense, the robbery underlying Petition 10 no longer satisfied section 875(a)(2), so the juvenile court could no longer rely on it to impose the six-month suspended SYTF term on Petition 11 under section 875(e)(4).

The People contend that both SYTF commitments the juvenile court imposed were proper because section 875(e)(4) authorized the suspended six-month term for the probation violation based on the February 2022 robbery, and section 875(a)

7

separately authorized the new three-year term for Petition 12 based on the new San Francisco robbery. This argument is mistaken, as our Supreme Court's decision in *Greg. F.*, *supra*, 55 Cal.4th 393, demonstrates.

*Greg F.* dealt with Welfare and Institutions Code section 733, a statute similar to Welfare and Institutions Code section 875, that governed the pre-realignment commitments of minors to the DJJ. (*Greg F.*, *supra*, 55 Cal.4th at pp. 400, 404.) Welfare and Institutions Code section 733, subdivision (c) states that a ward cannot be committed to the DJJ "unless 'the most recent offense alleged in any petition and admitted or found to be true by the court' . . . is one of the violent offenses listed in section 707, subdivision (b)" or one of the sex offenses listed in Penal Code section 290.008. (*Greg F.*, at p. 400, italics omitted.) The juvenile court in *Greg F.* sustained a Welfare and Institutions Code section 602 petition alleging that a minor had committed an offense listed in Welfare and Institutions Code section 707, subdivision (b), but the juvenile court did not place him in the DJJ.[3] (*Greg F.*, at pp. 400–401.) The district attorney later filed a new Welfare and Institutions Code section 602 petition alleging that the minor had committed two new offenses that are not described in Welfare and Institutions Code section 707, subdivision (b). (*Greg F.*, at p. 401.) After the minor admitted one of the offenses, the district attorney filed a notice of probation

---

[3] *Greg F.*, *supra*, 55 Cal.4th at p. 400, referred to the DJJ as the Division of Juvenile Facilities or DJF, but the two terms are used interchangeably. (*In re M.B.*, *supra*, 99 Cal.App.5th at p. 448, fn. 7.) For consistency, we refer to it as the DJJ.

violation under Welfare and Institutions Code section 777 and moved to withdraw the plea and dismiss the Welfare and Institutions Code section 602 petition because he wanted to make the minor eligible for commitment to the DJJ. (*Greg F.*, at pp. 401–402.)

The Supreme Court held the juvenile court had the authority to dismiss the second petition. (*Greg F.*, *supra*, 55 Cal.4th at p. 400.) The court began by examining Welfare and Institutions Code section 733, subdivision (c)'s language preventing a minor from being committed to the DJJ if " 'the most recent offense alleged in any petition and admitted or found to be true by the court is not' " described in Welfare and Institutions Code section 707, subdivision (b) or Penal Code section 290.008, subdivision (c). (*Greg F.*, at p. 404.) The court observed that because Welfare and Institutions Code section 733, subdivision (c)'s "commitment limitation depends on the nature of 'the most recent offense alleged in any *petition*' " and probation violations are raised by a notice under Welfare and Institutions Code section 777 and not a petition, "the statute does not bar [DJJ] commitments imposed for probation violations on qualifying offenses." (*Greg F.*, at pp. 404–405; accord, *id.* at p. 410.) But commitment to DJJ "cannot be ordered based on a past offense in the ward's juvenile record if the ward's most recent offense does not qualify." (*Id.* at p. 404.) "[I]f the prosecution alleges the new offense in a 602 petition instead of a 777 notice, a commitment to [DJJ] is potentially foreclosed because the new 602 petition becomes the relevant petition for determining the

9

minor's 'most recent offense alleged in any petition' for purposes of section 733(c)." (*Id.* at pp. 410–411.) Because the prosecutor had mistakenly raised the minor's most recent offense in a new Welfare and Institutions Code section 602 petition rather than a Welfare and Institutions Code section 777 notice, the court had to decide whether the juvenile court could dismiss the new petition after the minor admitted the offense so that the most recent offense adjudicated in a petition would be the first offense making him eligible for commitment to the DJJ. (*Greg F.*, at p. 405.) The Supreme Court went on to conclude that the prosecutor could do so. (*Id.* at pp. 405–420.)

*In re D.B.* (2014) 58 Cal.4th 941, 947, expanded on *Greg F.* and held that commitment to the DJJ required not only that an eligible offense be alleged in the most recent petition, but also that the eligible offense be the most recently committed offense alleged in that petition. (See also *In re J.P.* (2023) 94 Cal.App.5th 74, 77 [juvenile court had authority to dismiss one allegation in a petition to make a ward eligible for an SYTF commitment under § 875]; *In re J.B.* (2022) 75 Cal.App.5th 410, 413 [juvenile court can dismiss fully adjudicated section 602 petitions to make a ward eligible for commitment to the DJJ]; but see *In re A.O.* (2017) 18 Cal.App.5th 390, 395–397 [holding, in part because of the "sparse record" before it, that juvenile court improperly dismissed non-707(b) offense in petition to make ward eligible for DJJ].)

Although *Greg F.* involved section 733 rather than section 875, the similarity of the language in the statutes, as well as the

fact that the Legislature intended commitment to SYTFs to replace commitment to the DJJ, counsels in favor of following *Greg F.* in the interpretation of section 875. (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785 [" 'Where . . . legislation has been judicially construed and a subsequent statute on the same or an analogous subject uses identical or substantially similar language, we may presume that the Legislature intended the same construction, unless a contrary intent clearly appears.' "]; see *In re L.H.* (2025) 110 Cal.App.5th 591, 603 [construing § 875 in part by reference to statutes governing commitments to the DJJ]; *In re M.B.*, *supra*, 99 Cal.App.5th at pp. 460–461, 466–469 [same].) Pursuant to *Greg F.*, the juvenile court could not impose an SYTF commitment for the notice of probation violation in Petition 11. When it imposed the suspended six-month term in Petition 11, the juvenile court had already adjudicated Petition 12, making the robbery offense in that petition "the most recent offense for which the juvenile has been adjudicated." (§ 875(a)(2).) Even if we view the adjudications of Petitions 11 and 12 as simultaneous because the disposition hearings for both took place at the same time, the offense in Petition 12 was more recent than the offense in Petition 10 on which the probation violation notice rested. Under *In re D.B.*, *supra*, 58 Cal.4th at page 947, the juvenile court still could not impose an SYTF commitment under Petition 11.

Although section 875(e)(4) explicitly addresses grants of probation while section 733 does not, this distinction does not compel a different result. The definition of "most recent offense"

11

drove *Greg F.*'s analysis. That language is identical in both statutes. Nothing in section 875 suggests the Legislature intended to have section 875 operate differently than section 733, or to allow additional consecutive or concurrent commitments to an SYTF based on probation violations and section 602 petitions.

V.D. asks us to strike the suspended six-month SYTF term on Petition 11 as being in excess of the juvenile court's jurisdiction. However, in criminal court, "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 893; see also *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1140 ["every time a ward appears for disposition, the court may consider the minor's entire history and the order must be all encompassing"].) Additionally, a juvenile court that commits a ward to an SYTF must conduct progress reviews every six months to determine whether to reduce the baseline term (§ 875, subd. (e)(1)(A) (§ 875(e)(1)(A)), so the juvenile court is more knowledgeable about V.D.'s current circumstances. Indeed, V.D. augmented the record with evidence that the juvenile court reduced the term of the SYTF commitment by five months and stepped V.D. down to a less restrictive placement after the disposition order. Accordingly, we will reverse the juvenile court's disposition order and remand for the juvenile court to enter a new order.

12

## II. Maximum Term of Confinement

V.D. next contends the trial court exceeded its jurisdiction when it set the maximum confinement term under section 875. We are not convinced.

Section 875, subdivisions (b) and (c), require a juvenile court committing a ward to an SYTF to set baseline and maximum terms of confinement.  The baseline term is set "based on the most serious recent offense for which the ward has been adjudicated" and represents "the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community.  The baseline term of confinement for the ward shall be determined according to offense-based classifications that are approved by the Judicial Council . . . ." (§ 875, subd. (b)(1) (§ 875(b)(1).)  As noted *ante*, the juvenile court may modify the baseline term at progress hearings held every six months.  (§ 875(e)(1)(A).)

Section 875, subdivision (c)(1) (§ 875(c)(1)) states that a juvenile court must also "set a maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation."  "The maximum term of confinement shall represent the longest term of confinement in a facility that the ward may serve subject to" three conditions.  (§ 875(c)(1).) Section 875, subdivision (c)(1)(A) (§ 875(c)(1)(A)) establishes that "[a] ward committed to a secure youth treatment facility under

13

this section shall not be held in secure confinement beyond" 23 or 25 years of age, depending on the ward's offense, "or two years from the date of the commitment, whichever occurs later." Section 875, subdivision (c)(1)(B) (§ 875(c)(1)(B)) states, "The maximum term of confinement shall not exceed the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses." It also recognizes that a juvenile court may aggregate the terms on multiple counts or petitions, including previously sustained petitions. (*Ibid.*) And section 875, subdivision (c)(1)(C) (§ 875(c)(1)(C)) declares, "Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision."

The juvenile court set a baseline term of three years based on the Judicial Council classifications. (See Cal. Rules of Court, rule 5.806(d).) It set a maximum term of confinement of five years and four months based on aggregating V.D.'s offenses, a term that would end in May 2029. V.D. does not quarrel with this calculation under section 875(c)(1)(B). He instead points out that the May 2029 maximum term of confinement extends past the date he turns 23 in February 2029. He contends this violates the condition in section 875(c)(1)(A) that a minor not be held in an SYTF beyond 23 years of age.

A different Division of this court recently considered and rejected this argument in *In re L.H.*, *supra*, 110 Cal.App.5th 591. That case considered whether a juvenile court correctly set a maximum confinement term of 25 years, which would expire well beyond the ward's 25th birthday. (*Id.* at p. 599.) The court held

14

that the age-based limits in section 875(c)(1)(A) operated "to provide a separate ceiling on the length of a ward's physical confinement." (*In re L.H.*, at pp. 599–600; see also *In re M.B.*, *supra*, 99 Cal.App.5th at p. 461, fn. 21 [describing § 875(c)(1)(A) as providing a "separate cap" on a ward's "actual time spent in confinement"].) *In re L.H.* reached this conclusion in part by noting that all three subparagraphs follow the " 'subject to' " phrase in section 875(c)(1) and concluding that they all "limit[] the actual length of a ward's confinement time, and not necessarily the juvenile court's discretion to set a maximum term of confinement." (*In re L.H.*, at pp. 600–601.)

The court contrasted the language used in section 875(c)(1)(A), which states that a ward "*shall not be held* in secure confinement beyond" the relevant age cutoffs, with the language used in section 875(c)(1)(B), which states that the "maximum term of confinement *shall not exceed* the middle term of imprisonment that can be imposed upon an adult convicted of the same offense or offenses." (§ 875(c)(1)(A)–(B), italics added; *In re L.H.*, *supra*, 110 Cal.App.5th at p. 601.) The difference between section 875(c)(1)(A)'s "shall not be held" and section 875(c)(1)(B)'s "shall not exceed" indicated that the Legislature intended the former to "refer to a separate cap on a ward's actual confinement time" while the latter limits the maximum term that a juvenile court sets. (*In re L.H.*, at p. 601.) Section 875(c)(1)(C), meanwhile, presumes that the juvenile court has already set a maximum limit and directs the court to then apply precommitment credits against it. (*In re L.H.*, at p. 601.) *In re*

15

*L.H.* noted that an earlier version of the statute had stated that " 'the maximum period of confinement shall not exceed' " a ward's 25th birthday, but the Legislature had amended it to replace that language with the " 'shall not be held' " phrasing. (*Id.* at p. 604, italics omitted.) The court viewed this change as "strong evidence" that section 875(c)(1)(A) should not be construed as limiting the calculation of the maximum term of confinement. (*In re L.H.,* at p. 604.)

In re *L.H.* took guidance from the statutes that governed commitments to the DJJ before realignment, whose age-based discharge requirements courts had interpreted as "providing a cap on a ward's actual confinement time separate from the maximum term of confinement set by the juvenile court." (*In re L.H.*, *supra*, 110 Cal.App.5th at pp. 602–603, citing, inter alia, *In re R.O.* (2009) 176 Cal.App.4th 1493, 1497 & fn. 3 ["maximum term of confinement" is a "theoretical maximum period of confinement" because a ward usually "cannot be confined beyond his 25th birthday"].) The court also found its interpretation comported most closely with the Legislature's apparent intent behind the statute. (*In re L.H.,* at p. 605.) Because section 875(c)(1)(C) requires a juvenile court to apply a ward's precommitment credits against the maximum term of confinement, limiting the calculated maximum term of confinement to a ward's 23rd or 25th birthday based on section 875(c)(1)(B) would make such a ward's commitment even shorter after the application of credits, while a younger ward who committed a similar offense would only receive the

16

precommitment credits against the full length of the section 875(c)(1)(B) term.  (*In re L.H.,* at p. 605.)

The court rejected the ward's argument that calculating a maximum term of confinement under section 875(c)(1)(B) would be an idle act if section 875(c)(1)(A) imposed a separate cap.  (*In re L.H.*, *supra*, 110 Cal.App.5th at p. 606.)  It found this would not be true in every case, since many wards' maximum terms will end before the age cutoff.  (*Ibid.*)  The court also observed that a ward should generally be discharged upon the expiration of the baseline term set under section 875(b)(1), which may be shorter than the maximum term of confinement and can be reduced still further at progress review hearings.  (*In re L.H.,* at p. 606.)

*L.H.* also rejected the ward's statutory and equal protection arguments, based on *In re Ernesto L.* (2022) 81 Cal.App.5th 31, 34, that the juvenile court erred by applying his precommitment credits against the theoretical maximum confinement time rather than the jurisdictional age 25 limit in section 875(c)(1)(A).  (*In re L.H., supra*, 110 Cal.App.5th at pp. 606–608.)  The court noted, consistent with this court's decision in *In re M.B.*, *supra*, 99 Cal.App.5th at page 466, that section 875 already operates in the way that *In re Ernesto L.* decided the DJJ statutes should have.  (*In re L.H.*, at p. 607.)  This is in part because the maximum term under section 875(c)(1)(B) can be less than the maximum sentence an adult might face.  (*In re L.H.,* at p. 607.; see § 875(c)(1)(B) ["The maximum term of confinement *shall not exceed* the middle term of imprisonment that can be imposed

17

upon an adult convicted of the same offense or offenses," italics added].)

V.D. argues that *In re L.H.* was wrongly decided and urges us not to follow it. He first contends that because a juvenile court's jurisdiction ends at a ward's 25th birthday, setting a maximum term of confinement beyond that date is either an unlawful assertion of power or an idle act and is inconsistent with the implicit premise of juvenile court jurisdiction that a minor can be rehabilitated within the time of juvenile court jurisdiction. The primary answer to this is that the plain language of the statute and the intentionally different wording the Legislature used in the different subparagraphs of section 875(c)(1) compel the conclusion that the age cutoffs in section 875(c)(1)(A) operate as an independent cap on the time a minor will serve. (See *In re L.H.*, *supra,* 110 Cal.App.5th at pp. 599–601, 604–605.) Besides, a ward is presumptively discharged at the end of the baseline term, not the end of the maximum term. (§ 875(e)(3).) Calculating a maximum term of confinement that a minor most likely will not serve is therefore not an improper assertion of jurisdiction. Nor is it an idle act, since, among other things, a long maximum term can signal to a ward the gravity of his or her offenses. Moreover, setting a maximum term of confinement is a longstanding practice. (See *In re L.H.*, at pp. 602–604.) It was common for juvenile courts to set maximum terms of confinement to the DJJ that extended past the end of juvenile court jurisdiction. (*Id.* at p. 603; see, e.g., *Greg F.*, *supra,* 55 Cal.4th at p. 402 [noting that juvenile court set maximum

18

term of confinement of 17 years for 11-year old ward].)  As *In re L.H.* noted at page 606, courts at the time recognized that " '[i]n practice, the maximum term of imprisonment rarely determines the actual period of confinement of a ward committed to' secure confinement."  We discern nothing in section 875 that suggests the Legislature intended to depart from this practice after realignment.

Second, V.D. faults *In re L.H.*, *supra*, 110 Cal.App.5th at page 601 for treating sections 875(c)(1)(A) and 875(c)(1)(B) as limiting "the actual length of a ward's confinement time" while interpreting section 875(c)(1)(C) as a limit on the maximum term of exposure rather than the actual term.  We agree that this specific passage in *In re L.H.* is somewhat unclear because it states that all three subparagraphs in section 875(c)(1) limit the actual length of confinement but then relies on different wording of the subparagraphs to construe section 875(c)(1)(A) as independently limiting the actual term of confinement while section 875(c)(1)(B) limits the maximum term of confinement that a juvenile court may set.  (*In re L.H.*, *a*t pp. 600–601.)  But the rest of *In re L.H.* makes clear that the court meant only that the maximum time of confinement that a ward serves is "subject to" (§ 875(c)(1)) all three subparagraphs in the sense that the maximum term the court sets is subordinate to or possibly affected by them.  (*In re L.H.*, at pp. 600–601; see Merriam-Webster Online Dictionary (2025) <https://www.merriam-webster.com/dictionary/subject to> [as of October 14, 2025] [defining "subject to" as meaning "possibly affected by"].)  *In re*

19

*L.H.* does not say that each subparagraph impacts the maximum term of confinement in precisely the same way, and its analysis of the language in the different subparagraphs shows that they do not. (*In re L.H.*, at p. 601.)

Third, V.D. contends that *In re L.H.*'s analysis fails to effectuate the Legislature's intent that realignment result in the placement of wards in the least restrictive environment appropriate and reduce the use of confinement. This argument, too, founders on the plain language of the statute and the fact that section 875's language resembles the language of the statutes that previously governed commitments to the DJJ, as discussed *ante*. Regardless of the Legislature's stated intent behind realignment as a whole, the Legislature did not materially change the specific language at issue here, so there is no reason to construe the same language differently now.

V.D. contends that *In re L.H.* is inconsistent with the holding in *In re Ernesto L.*, *supra*, 81 Cal.App.5th at page 34, that precommitment credits for a DJJ commitment had to be applied against a maximum term of confinement rather than a theoretical maximum term of exposure. *In re M.B.* and *In re L.H.* have already rejected the same argument, pointing out that their interpretations of section 875(c) give wards the benefits of precommitment credits just as *In re Ernesto L.* held was required under the DJJ statutes. (*In re L.H.*, *supra*, 110 Cal.App.5th at pp. 607–608; *In re M.B.*, *supra*, 99 Cal.App.5th at pp. 466–469; see also *In re Jose R.* (2024) 102 Cal.App.5th 839, 848 [rejecting

20

comparison to *In re Ernesto L.* and DJJ-related statutes because
§ 875(c)(1)(C) is clear].)

Finally, V.D. argues that *In re L.H.*'s interpretation of
section 875 must be rejected under the rule of lenity or the
doctrine of constitutional avoidance or constitutional doubt
because it would deprive him of the benefit of his precommitment
credits, in violation of his constitutional rights to due process,
equal protection, and double jeopardy.[4] (*People v. Reynoza* (2024)
15 Cal.5th 982, 1012 [under rule of lenity, ambiguities in a
criminal statute should be resolved in favor of the defendant];
*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1373 [when a statute
is susceptible to two interpretations, one of which makes it
unconstitutional or raises "serious and doubtful constitutional
questions," courts will adopt the interpretation that makes the
statute valid or free from doubt as to its constitutionality].) V.D.
bases this argument on the fact that when a maximum term of
confinement extends beyond the age cutoff in section 875(c)(1)(A),
applying credits to that maximum term may not shorten the
actual term of confinement that a minor serves.

This argument is not persuasive. Section 875(c)(1)(A) is not
reasonably susceptible to V.D.'s interpretation for the reasons
discussed *ante*, so these doctrines do not come into play. (*People*

---

[4] To the extent that V.D. goes beyond the doctrine of
constitutional avoidance and contends more directly that section
875(c)(1)(A) violates his constitutional rights, we note that he
waited until his reply brief to raise the issue, thereby depriving
the People of the opportunity to respond to it. We therefore
decline to undertake a full constitutional analysis. (*People v.
Montelongo* (2020) 55 Cal.App.5th 1016, 1030, fn. 8.)

21

*v. Manzo* (2012) 53 Cal.4th 880, 889 [rule of lenity "applies ' "only if the court can do no more than guess what the legislative body intended; there must be an *egregious* ambiguity and uncertainty to justify invoking the rule" ' "]; *People v. Engram* (2010) 50 Cal.4th 1131, 1161 ["a statute must be construed, *if reasonably possible*, in a manner that avoids a serious constitutional question," italics added].)  Nor are the constitutional arguments V.D. raises so serious as to call into doubt *In re L.H.*'s interpretation of section 875(c)(1)(A).  Commitment credits can shorten a ward's actual time served when they reduce a maximum term of confinement to a date before a ward's relevant age cutoff.  This is true here, where the maximum term of five years and four months the court set ends in May 2029.  But after the application of the 776 days of precommitment credits that the juvenile court awarded (disregarding for the moment the additional credits V.D. claims in this appeal), it ends in April 2027, which is almost two years before V.D.'s 23rd birthday. Precommitment credits can also operate to reduce a baseline term, as occurred here when the juvenile court reduced the baseline term from four years to three after realizing that the maximum term, after precommitment credits, would have expired earlier than a four-year baseline term.  The Legislature's provision of an age-based cutoff in section 875(c)(1)(A) that applies in some scenarios to release a ward from confinement even earlier does not unconstitutionally deprive wards of the benefit of their credits.  The fact that V.D. would have benefitted

more from his preferred interpretation of the statute does not mean *In re L.H.*'s interpretation is constitutionally infirm.[5]

### III. Precommitment Credits

For the first time on appeal, V.D. challenges the juvenile court's calculation of his precommitment credits in several respects. As noted *ante*, Welfare and Institutions Code section 875(c)(1)(C) states, "Precommitment credits for time served must be applied against the maximum term of confinement as set pursuant to this subdivision." The statute does not prescribe how credits are to be calculated, but it is well established that Welfare and Institutions Code section 726, which applies to minors committed to an SYTF (*In re M.B.*, *supra*, 99 Cal.App.5th at p. 466; Welf. & Inst. Code, § 726, subd. (d)(5)), requires credits to be calculated under Penal Code section 2900.5.[6] (*In re Antwon R.* (2001) 87 Cal.App.4th 348, 352.)

---

[5] V.D. separately argues that the juvenile court's calculation of a three-year baseline term was improper because it extends past the end of the maximum confinement term that he contends was proper, after his precommitment credits are applied. Because the three-year baseline term does not exceed the maximum confinement term that the juvenile court set and that we have found to be proper, even after credits are applied, we need not discuss this argument.

[6] Penal Code section 2900.5, subdivision (a) states in pertinent part, "In all felony and misdemeanor convictions, . . . when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ."

V.D. contends and the People concede that he is entitled to additional credits for time spent on electronic monitoring and for the final partial days of various periods of custody. (Welf. & Inst. Code, § 628.2, subd. (c) [minors are entitled to precommitment credit for time on electronic monitoring]; *People v. Smith* (1989) 211 Cal.App.3d 523, 526 [for the purposes of Penal Code section 2900.5, defendants are entitled to a full day of credit for any partial day in custody].) However, we cannot total the precise number of credits due from these periods because we cannot tell from the record how the juvenile court calculated its credits in the first place. The court stated that it had calculated 768 days of credits while the probation officer had calculated 776 days of credits. The disposition report states that V.D. was entitled to 43 days of credits. The custody days reflected on the booking summary attached to the disposition report total 901 days. As the People point out, the juvenile court's order placing the minor on probation in August 2023, well over a year earlier, states that V.D. was then entitled to 894 days of credit. Because the record does not allow us to determine what the correct number of credits should be, we will leave this issue to the juvenile court on remand. We are already remanding for the juvenile court to fashion a new disposition order, so the credits calculation will need to be updated in any event. Neither V.D. nor the People oppose a remand for recalculation of credits.

When it recalculates V.D.'s credits, the juvenile court can also consider in the first instance V.D.'s argument, raised for the first time on appeal, that he is entitled to credits beginning with

24

the dates of his arrests rather than the dates of his bookings into juvenile facilities.  Given the lack of clarity in the record about the juvenile court's calculations as a whole, we cannot determine exactly how large of a period is at issue in this argument.

Clarifying the record could also affect our evaluation of the argument.  In general, it is not clear from the record or the parties' arguments exactly what type of detention V.D. was subject to between his arrests and his bookings into juvenile hall.  This lack of clarity prevents us from evaluating V.D.'s arguments that minors in juvenile court should be treated differently than adults for the purposes of custody credits.  To take the most significant example, the People contended the entire period between V.D's arrest in Los Angeles on January 30, 2020, and his booking into juvenile hall in Alameda County on February 4, 2020, should be excluded.  It seems unlikely that the minor was not booked into any juvenile facility during the five days before he was booked into Alameda County juvenile hall.  But even if he were not booked into some type of custody, the significant length of this period tends to bolster V.D.'s argument that he should be entitled to credit for pre-booking time, at least in some circumstances.  (Cf. *People v. Ravaux* (2006) 142 Cal.App.4th 914, 919–920 [refusing to give credit for three-hour period between arrest and booking].)  Additionally, the People ignore V.D.'s claim that he is entitled to additional credit for time spent in custody in San Francisco on Petition 12, even though the disposition report's calculation of 43 days of credit includes 23 days for that period.  Before we can meaningfully review the question of pre-booking

credits, such ambiguities in the record need to be clarified. We will therefore remand for the juvenile court to address such issues and any others the parties raise.

## IV. Restitution Fine

Finally, V.D. contends the $100 restitution fine the juvenile court imposed must be stricken. He points out that while this appeal was pending, the Legislature amended section 730.6, subdivision (a)(2) to state that a juvenile court "shall not impose a separate and additional restitution fine against a minor found to be a person described in Section 602." (Stats. 2024, ch. 805, § 6, eff. Jan. 1, 2025.) He argues he is entitled to the retroactive effect of this ameliorative change in the law because his case is not yet final and the Legislature did not state that the new law is only prospective. (*People v. Esquivel* (2021) 11 Cal.5th 671, 673.) The People concede the point, and we accept their concession. On remand, the juvenile court shall omit any restitution fines from its new disposition order.

## DISPOSITION

The juvenile court's disposition order is reversed. The matter is remanded for further proceedings not inconsistent with this opinion.

BROWN, P. J.

WE CONCUR:


GOLDMAN, J.
CLAY, J.*

*In re V.D. / People v. V.D.  (A169633)*

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.